SAMPSON-SAWYER CO., INC.
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR
STATE OF MAINE

Kennebec. Opinion, December 28, 1960

*Preti & Preti,* for plaintiff.

*Ralph W. Farris, Asst. Atty. Gen.,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.   On exceptions.   The appellant was assessed a tax of $1328.99 as a deficiency assessment.  An oral hearing for reconsideration of assessment was held before the State Tax Assessor.  The assessor refused reconsideration of the assessment and to this refusal the appellant appealed to a single justice of the Superior Court, as provided by statute (Chap. 17, Sec. 33, R. S., 1954).  The justice below, after a hearing, dismissed the appeal.  Appellant took issue by filing exceptions and it is on these exceptions that the matter is before this court for consideration.

The appellant, Sampson-Sawyer Co., Inc., is a supermarket, a retail grocery store having a place of business in Augusta, Maine.  It handles meats, produce, dry groceries and other classifications normally found in supermarkets. Five thousand items constitute the inventory.  Malt beverages have been sold by the appellant since August 15,

1954. On December 16, 1953 the appellant was granted a permanent classified permit of 90% by the State Tax Assessor, meaning that for sales tax purposes the appellant would collect and pay to the State Tax Assessor the sales tax computed by applying the applicable sales tax rate against 10% of the gross sales of the store. Following an audit a deficiency assessment was made covering a period from September 1, 1956 through July 31, 1958. Subsequent to the audit, and as a result of it, the tax assessor, in accordance with the terms and provisions of Sec. 14, Chap. 17, amended the permanent classified permit from 90% to 86.7%. This meant that the sales tax would be applicable to 13.3% of the gross sales of the store.

The exceptions, in substance, present these issues:

1. That the findings of fact of the presiding justice are not supported by sufficient credible evidence.

2. The State Tax Assessor has unconstitutionally administered a constitutional statute through his regulations by using words upon which he relies for his deficiency assessment which are so vague, indefinite and confusing to persons to whom the act or regulation applies that they cannot tell with sufficient definiteness what the regulation requires of them.

3. The State Tax Assessor has unconstitutionally administered a constitutional statute through his use of an administrative "rule of thumb" in that the administrative rule discriminates, by its very nature, between retailers having identically the same types or kinds of businesses and similar changes in the percentage of taxables upon audit, thus not affording the appellant equal protection of the law.

The State Tax Assessor bases his authority for making a retroactive deficiency assessment on Sec. 20, Chap. 17, and Regulation 13 (b) (4).

"**Deficiency assessment.** — After a report is filed under the provisions of this chapter, the assessor shall cause the same to be examined, and may make such further audits or investigations as he may deem necessary and if therefrom he shall determine that there is a deficiency with respect to the payment of any tax due under this chapter, he shall assess the additional taxes and interest due the state, give notice of such assessment to the person liable, and make demand upon him for payment but no such additional assessment can be made after 2 years." Sec. 20, Chap. 17, R. S., 1954.

"**b. Permanent Permits.** A permanent classified permit will be issued after the business of the temporary permit holder has been audited by the Bureau of Taxation. The permanent percentage will be based upon such audit. *The permanent percentage will be used for reporting purposes, and its use will not result in any additional assessment upon audit unless some major change in the retailer's business has occurred in the interim. Therefore, if the retailer changes his type of business in any material respect, as by adding other lines of taxable or non-taxable merchandise, he should notify the Bureau of Taxation promptly so that an adjustment in the permit may be made.* For further information as to permanent permits, see (4), below." (Emphasis supplied.) Sales and Use Tax Regulation 13.

"**4. Permanent Classified Permit.** A permanent classified permit will be issued to the applicant at such time as it is possible for the Sales Tax Division to make a thorough audit of the taxpayer's business. The permanent permit will be issued only upon written consent of the retailer. *The percentage granted in a permanent classified permit will not be subject to change unless the nature of the retailer's business changes materially. The holder of a permanent classified permit should report any material change in his business, likely to affect the percentage issued, to the Sales Tax Division promptly.* Except in the case of such change,

the percentage granted by the permanent classified permit will not be subject to change except upon further audit by the Sales Tax Division. So long as the permanent classified permit is in effect, the retailer's liability so far as the breakdown of sales of tax exempt commodities is concerned, will be limited by the percentage granted. Any audit made for the period covered by the permanent classified permit for the purpose of verifying returns of the retailer will be based upon such percentage. Thus no deficiency assessment will be based upon any variance between the permanent percentage issued and the retailer's actual records, *except in the case of a material change in the type of business.*" (Emphasis supplied.) Sales and Use Tax Regulation 13.

The appellant concedes the assessor had the right to change the classified permit, after audit, but that under the circumstances of this case there was no vested authority for him to make a retroactive deficiency assessment for the period between September 1, 1956 through July 31, 1958, because the fact that the appellant added the sale of malt beverages to its business did not conform to the terms and definitions contained in Regulation 13 or in the various information bulletins issued by him. This presents the question as to what part Regulation 13 and the informative bulletins play in the administration of the sales tax law and what bearing they may have on the authority of the tax assessor to impose the retroactive deficiency assessment. The Legislature saw fit to provide the assessor with authority to make reasonable rules and regulations for the proper and efficient administration of his office.

"**Administration.** — The Assessor is authorized and empowered to carry into effect the provisions of this chapter and, in pursuance thereof, to make and enforce such reasonable rules and regulations consistent with this chapter as he may deem necessary." Sec. 23, Chap. 17, R. S., 1954.

Here lies the power, in the first instance, for the issuance of Regulation 13 and various informative bulletins. The authority of the assessor to amend or revoke a classified permit is found in Sec. 14 of the Act:

> "Such classified permit may be amended or revoked as to its classification whenever the assessor shall determine that the percentage of exempt sales is inaccurate."

The authority conferred is the right to amend or revoke when he, the assessor, determines that the percentage of exempt sales is inaccurate. The authority given to the assessor lacks direction as to method of determining when exempt sales are inaccurate. The assessor in the proper administration of his office must of necessity establish a formula or standard which when applied to a given situation would determine the inaccuracy of the percentage of exempt sales. In establishing this standard he was not legislating the imposition of taxes but was explaining and interpreting a provision of the statute to the end that the retailer would be in possession of information which would be helpful to him in meeting the requirement of reporting new lines of merchandise which would give rise to an amended or revoked classification of percentage of exempt sales.

The appellant argues that because the assessor in his regulation and general information bulletins used words of definition which were vague, indefinite and confusing that he is unconstitutionally administering a constitutional statute and that he is further unconstitutionally administering a constitutional statute by establishing a "rule of thumb" rule in defining a "major change" as a change in excess of 30% of taxables from a previously granted permanent classified permit. The general information bulletins and Regulation 13, insofar as they treat of classified permits, were issued to assist in carrying out the intent of the Legislature. The rules promulgated therein do not exceed

legislative intent nor are they repugnant to or inconsistent with the provisions of Sec. 14 of the Sales and Use Tax Law. Recognition is given to the fact that interpretative bulletins issued by administrators play an important part in the administration of laws. In this connection reference is made to the case of *James P. Mitchell, Secretary of Labor, U. S. Department of Labor, Applt.* v. *The Kroger Company,* 248 F. (2nd) 935. In this case the court said, on page 941:

> "Reliance is had herein on an Administrator's interpretative bulletin of 1944, wherein it was indicated that traveling auditors under the facts given there would be included in the exemption. The Administrator's interpretative bulletins carry weight but are not controlling."

The assessor, with authority, issued Regulation 13 for the purpose of administering that portion of Sec. 14, Chap. 17 concerning classified permits wherein the percentage of exempt sales was established. This regulation is in part explanatory and also in its terms procedural. That portion germane to the issue states that the permanent percentage established in a classified permit shall be used for reporting purposes and its use will not result in any additional assessment *"unless some major change in the retailer's business has occurred in the interim."* The assessor by way of explaining or defining *"some major change in the retailer's business"* says, in Regulation 13 (b):

> " - - - - Therefore, if the retailer changes his type of business in any material respect, as by adding other lines of taxable or non-taxable merchandise, he should notify the Bureau of Taxation promptly so that an adjustment in the permit may be made."

Not only does the assessor define what he means by a "major change" but he adds a note of caution to the retailer saying that if he changes his type of business *"by adding other lines of taxable or non-taxable merchandise"* he shall notify the Bureau of Taxation promptly so that an adjustment in

the permit may be made. In addition to this regulation the assessor in furtherance of the proper administration of the Act caused to be issued and circulated among the retailers general information bulletins. In some of these bulletins he informed the retailer of what he meant by the following words contained in Regulation #13, (4), "the percentage granted in a permanent classified permit will not be subject to change unless *the nature* of the retailer's business changes materially." and in the regulation (b), "unless some major change in the retailer's business has occurred."

The bulletins state:

> "The percentage given on a Permanent Classified Permit which is established upon audit, is not subject to change *unless the nature of the business changes materially."* (Emphasis supplied.) Bulletin # 11.

> "The permanent permit, - - - will protect the seller against an assessment upon audit, *unless there has been a substantial change in the character of the seller's business."* (Emphasis supplied.) Bulletin #17.

> *"The question may be raised as to what constitutes a radical change in the nature of a business,* such as will result in a retroactive change under a classified permit. *As a rule of thumb, if the percentage of taxables upon audit differs from that used for the permit by more than 30%, a retroactive adjustment can be expected."* (Emphasis supplied.) Bulletin #18.

At this point it is important to note that the increase in taxables was found, upon audit, to be over 30%. From the nature of the explanatory material in these bulletins it can be properly inferred that they contribute information and assist the retailer in the conduct of his business, tax-wise, when operating under classified permits issued by the tax assessor. These informative bulletins used various descriptive adjectives and phrases and when taken in context seem

to bear a similarity of description. The bulletins serve the purpose of interpretation and the establishment of policy under the provisions of Regulation #13 as to permanent classified permits. They are, in some respects, guides to the retailer informing him as to the assessor's interpretation and construction of Sec. 14 and the manner in which he intends to enforce it. They do not have the force of law but are interpretative of the application of the Act insofar as the retailer's legal responsibility is concerned under the permanent classified permit as provided by Regulation #13.

In the case of *Skidmore, et al.* v. *Swift & Co.*, 323 U. S. 134, the court deals, to some extent, with the rules and regulations promulgated by an administrator. The court said, on page 137:

> "But it did create the office of Administrator, impose upon him a variety of duties, endow him with powers to inform himself of conditions in industries and employments subject to the Act, and put on him the duties of bringing injunction actions to restrain violations. Pursuit of his duties has accumulated a considerable experience in the problems of ascertaining working time in employments involving periods of inactivity and a knowledge of the customs prevailing in reference to their solution. - - - - - He has set forth his views of the application of the Act under different circumstances in an interpretative bulletin and in informal rulings. They provide a practical guide to employers and employees as to how the office representing the public interest in its enforcement will seek to apply it."

In *Comptroller of Treasury* v. *M. E. Rockhill, Inc.*, 107 A. (2nd) 93 (Md.), the court, in considering administrative rules on page 98 said:

> "There are several different classes of administrative rules. Some are legislative rules, which receive statutory force upon going into effect. Others are interpretative rules, which only interpret the

statute to guide the administrative agency in the performance of its duties until directed otherwise by decisions of the courts. Some rules are merely rules of procedure. Others implement the statute by stating the policy by which the agency will be governed in the exercise of its authority."

Again, on page 98:

"There can be no question that an administrative official charged with the enforcement of a sales tax statute has no authority to promulgate a rule for the computation of a tax so as to impose the tax upon a transaction which is not taxable under the provisions of the statute. No tax can be lawfully imposed except upon express authority vested in the official who seeks to impose it. In interpreting a tax statute, the court must not extend its provisions by implication beyond the clear import of the language employed."

And on page 97:

"The sales tax is an excise tax imposed by the Legislature in the exercise of the police power of the State. The Legislature, in Section 361 of the Retail Sales Tax Act, authorized the Comptroller to adopt such rules and regulations as he shall deem necessary to carry out the provisions of the Act and to define any terms used therein. It is universally recognized that it would be impossible for the Legislature to deal directly with the multitude of details in the complex conditions upon which it legislates, and so it has become customary for the Legislature to delegate to each administrative agency the power to make rules and regulations to carry legislation into effect. Unless an administrative officer or department is permitted to make reasonable rules and regulations, it would be impossible in many instances to apply and enforce the legislative enactments, and the good to be accomplished would be entirely lost."

The assessor was clothed with the authority under Sec. 14 to determine whether the percentage of exempt sales was

inaccurate or not. He promulgated Regulation 13 and issued informative bulletins advising as to the method which he would use in determining inaccuracy. This appellant was fully informed as to the procedures the assessor would adopt and, in addition, was warned that it should notify the Bureau of Taxation promptly if it was adding other lines of taxable or nontaxable merchandise in order that an adjustment in the permit could be made. Despite the regulation and informative bulletins the appellant chose not to comply so, upon audit, it was charged with a deficiency assessment which under the powers given him under Sec. 14 the assessor had a legal right to do.

We are of the opinion insofar as the complaint of unconstitutional procedure on the part of the assessor is concerned that it is groundless. The procedures of which it complains are more beneficial to it than detrimental.

The justice below heard the appeal and denied the same. The record discloses sufficient credible evidence to support his findings. There were no errors of law.

The appeal section of the Sales and Use Tax Law reads in part:

> "Hearings may be had before the court in term time or any justice thereof in vacation and the decision of said court or justice upon all questions of fact shall be final."

Chap. 17, Sec. 33, R. S., 1954.

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Rule 52 (a) Maine Rules of Civil Procedure.

See *Harriman* v. *Spaulding*, 156 Me. 440.

The entry will be,

*Exceptions overruled.*