**FORD MOTOR CREDIT CO.**

v.

**THOMPSON MACHINE, INC.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1994.

Decided Oct. 28, 1994.

F. Bruce Sleeper (orally), Karen McGee Hurley, Jensen Baird Gardner & Henry, Portland, for plaintiff.

John S. Campbell (orally), Poulos & Campbell, P.A., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ. and COLLINS, A.R.J.*

RUDMAN, Justice.

This is the second time this case has come before us. Ford Motor Credit Company (FMCC) now appeals from the Superior Court's (Cumberland County, *Lipez, J.*) denial of a motion for an additional attachment in the amount of $57,000. In October 1992 we affirmed the grant of attachments against the same defendants—Thompson Machine, Inc. (Thompson), its owner Lawrence Caldwell, and his wife Sandra Caldwell—in amounts totalling collectively almost $2 million. The court's refusal to grant FMCC's request for the additional attachment was based on a factual finding that FMCC had failed to give Thompson, as a debtor and a guarantor, and the Caldwells, as guarantors, adequate notice of the sale of twenty-eight of the fifty-nine pieces of collateral, and the following legal conclusions: (1) that a guarantor is a debtor as that term is defined under the U.C.C.;[1] and (2) that FMCC's failure to give notice barred its deficiency claim. We agree with the court's conclusion that guarantors cannot waive notice of sale pursuant to Article 9 of the U.C.C.

Thompson was engaged in the business of selling and leasing heavy construction and industrial equipment prior to its forced liquidation. Lawrence Caldwell, Jr. is the sole shareholder of the capital stock of Thompson. Sandra Caldwell is his wife. To finance its business, Thompson entered into three types of financing arrangements with FMCC. Pursuant to the "Wholesale Plan," FMCC extended credit to Thompson for the purchase of its inventory of tractors and other pieces of equipment, with interest to be paid monthly until the equipment was sold, at which time the balance was due to FMCC. Under the second financing arrangement, Thompson leased equipment to third parties and FMCC purchased those leases, with Thompson guaranteeing the lease payments and agreeing to repurchase the leases if the lessees default. Pursuant to the third arrangement, Thompson sold equipment to third parties under "Retail Contracts" and assigned its rights in those contracts to FMCC, guaranteeing the retail purchasers' obligations.

In support of Thompson's obligations under each of the three financing agreements, Lawrence Caldwell signed "Continuing Guarantys," in 1974 and 1979, and both he and Sandra Caldwell signed the most recent "Continuing Guaranty" in 1980, whereby the Caldwells personally and unconditionally guaranteed the obligations owed by Thompson to FMCC. The 1980 document provided that the Caldwells waived all "demands and notices required by law" and further authorized FMCC to "liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of us hereunder."

---

* Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice was authorized to continue his participation in this case in his capacity as an Active Retired Justice.

1. 11 M.R.S.A. § 9–105(1)(d) (Supp.1993).

Thompson defaulted and FMCC repossessed and sold most of the inventory at public auction sales in March 1991 and March 1992. Thompson and/or the Caldwells did not receive a notice of sale for twenty-eight of the fifty-nine pieces of inventory sold. FMCC alleged that there was a $906,884.19 deficiency, which it filed suit to recover. FMCC also sought an attachment and trustee process, which was granted by the court in the amount of $801,215.93 against Thompson and $900,000 against the Caldwells. We affirmed that order in *Ford Motor Credit Co. v. Thompson Machine, Inc.,* 615 A.2d 608 (Me.1992).

FMCC then filed a motion for an attachment in the additional amount of $57,000 representing the subsequent defaulted amounts, as well as accrued interest. Thompson and the Caldwells moved for a partial summary judgment on the ground that FMCC had failed to provide them with adequate notice of sale and therefore the deficiency claim was barred. The court granted a partial summary judgment in favor of Thompson and the Caldwells, and denied the additional attachment because FMCC had failed to give notice with respect to twenty-eight of the fifty-nine pieces of collateral, thereby forfeiting its right to recover a deficiency on those items. *See Camden Nat'l Bank v. St. Clair,* 309 A.2d 329 (Me.1973) (creditor's failure to provide notice to debtor bars recovery of deficiency).

FMCC appealed the denial of the attachment, as well as the grant of the partial summary judgment. Thompson and the Caldwells moved to dismiss for lack of finality with respect to the partial summary judgment, and on the basis that the appeal of the denial of the attachment was taken in bad faith in light of their willingness to consent to the additional attachment. We granted a motion to dismiss the appeal of the nonfinal partial summary judgment, but we denied the motion to dismiss the appeal of the denial of the attachment.

## I.

It is well established that the grant or denial of an attachment order is immediately appealable. *Foley v. Jacques,* 627 A.2d 1008 (Me.1993). Thompson and the Caldwells argue, however, that because they offered to consent to the additional attachment, notwithstanding the court's denial of the attachment, FMCC had no reason to proceed with its appeal. Thompson and the Caldwells apparently were willing to allow the additional attachment to forego the costs of appeal. Their acquiescence to the attachment, they argue, rendered the matter moot.

We will not consider an appeal that has become moot, meaning "there is no longer a controversy between the parties due to intervening circumstances." *Graffam v. Wray,* 437 A.2d 627, 631 (Me.1981). "Intervening circumstances," however, do not include a party's refusal to accept a settlement offer. The court's order denying the motion for attachment was based on FMCC's failure to give notice of sales to Thompson and the Caldwells as to almost half of the collateral, with the consequence of a loss of recovery on the deficiency for those items. FMCC had an interest in pursuing an appeal of this order irrespective of the defendants' offer to consent to the attachment. We therefore reject the argument that the controversy between FMCC and the defendants is moot.

## II.

FMCC concedes that its failure to provide adequate notice of sale of the items of collateral covered by the Wholesale Plan to Thompson as the primary obligor constituted a violation of section 9–504[2] of Article

---

2. Subsection 9–504(3) provides in pertinent part that:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification* of the time and place of any public sale or other intended disposition is to be made *shall be sent by the secured party to the debtor* if, except in the case of consumer goods, he has not signed

9, which requires that the creditor provide the debtor with such notice. FMCC takes issue, however, with the court's characterization of Thompson and the Caldwells as "debtors" for purposes of receiving notice of sale when Thompson and the Caldwells had only assumed secondary liability, that is, as *guarantors*, of these agreements.

The Article 9 definition of "debtor" reads: "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

11 M.R.S.A. § 9–105(1)(d) (Supp.1993). We agree with the majority of jurisdictions that have held that guarantors are "debtors" covered by this definition on the strength of the broad language "the person who owes payment or other performance of the obligation secured." [3]

As the owner of the collateral covered by the Wholesale Plan, Thompson is clearly the debtor, because it owed payment of the obli-

gation secured. That arrangement, however, did not pertain to the leases and sales agreements. In those instances, third parties owed the debts secured by the rights and the collateral. Thompson was a guarantor when the third parties defaulted, which indeed many of them did. The collateral secured the obligations of the third parties, not the obligations of the guarantor. Nevertheless, because Thompson "owed an obligation" to FMCC due to the debtors' defaults, we must include it in the broad section 9–105(1)(d) definition of a debtor. Likewise, the Caldwells as guarantors are by the Code definition "debtors." [4]

### III.

As a consequence of characterizing a guarantor as a debtor for purposes of Article 9, courts have had to deal with the issue of waiver of debtor protections. In the instant case, for example, the court found that the guarantees of Thompson and the Caldwells entitled them to the status of debtors. Therefore, because debtors cannot waive their right to receive notice, pursuant to 11 M.R.S.A. § 9–501(3) (Supp.1993),[5] the court held that the waivers of notice in the guarantee agreements were likewise invalid. We agree with this conclusion, for to do otherwise would disregard the plain language of

after default a statement renouncing or modifying his right to notification of sale.
11 M.R.S.A. § 9–504(3) (Supp.1993) (emphasis added).

3. To date at least 26 state courts have held that a guarantor is a "debtor." *See, e.g., Watseka First Nat'l Bank v. Ruda,* 135 Ill.2d 140, 142 Ill.Dec. 184, 552 N.E.2d 775 (1990); *Lankheit v. Estate of Scherer,* 811 S.W.2d 853, 858 (Mo.Ct.App.1991); *Gregory Poole Equipment Co. v. Murray,* 105 N.C.App. 642, 414 S.E.2d 563 (N.C.Ct.App.1992); *Reuter v. Citizens & N. Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991); *Vermont Indus. Dev. Auth. v. Setze,* 157 Vt. 427, 600 A.2d 302, 304 (1991).

4. Apparently the widespread practice of including guarantors in the definition of "debtor" has led some to conclude that the definition may be a bit too broad. *See, e.g.,* Harry C. Sigman, *Guarantors' Pre–Default Waivers of Article 9 Debtors' Rights to Notice and Commercially Reasonable Disposition Should be Effective,* 29 Idaho L.Rev. 627, 636–37 (1992–93). In fact, a report issued by the Study Committee established by the Per-

manent Editorial Board of the Uniform Commercial Code recommended defining guarantor as a debtor in limited circumstances, and offered as an alternative the drafting of a separate definition for the term "guarantor." Report of the Article 9 Study Group of the Permanent Editorial Board of the Uniform Commercial Code 225 (Dec. 1, 1992).

5. 11 M.R.S.A. § 9–501 provides in pertinent part:

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral ... but the parties may by agreement determine the standards by which fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

(b) Subsection (3) of section 9–504 ... which deal[s] with disposition of collateral....
11 M.R.S.A. § 9–501(3)(b) (1964 & Supp.1993).

the statute.[6]

While we recognize that other courts, including the federal district court in Maine, have held to the contrary, that is, that the anti-waiver provision does not apply to a guarantor, *United States v. H & S Realty Co.*, 647 F.Supp. 1415 (D.Me.1986), we believe there are compelling reasons to provide guarantors with the same anti-waiver protection afforded to debtors.

A pro-waiver stance is primarily justified by economic efficiency; allowing guarantors to waive protections enables otherwise risky loan transactions. *See, e.g., United States v. H & S Realty Co.*, 837 F.2d 1, 2–3 (1st Cir.1987). *See also Chrysler Credit Corp. v. Curley*, 753 F.Supp. 611, 616 (E.D.Va.1990). Although this is a worthy policy, we conclude, as have other courts, that *prohibiting* guarantors from waiving Article 9 protections also has the effect of promoting efficiency. The efficiency promoted by enforcing the anti-waiver provision occurs in the default and foreclosure stage of the transaction, not the front-end of the loan transaction. It encourages lenders to provide the guarantor with the opportunity to attend the sale and perhaps maximize the purchase price. *See Canadian Commercial Bank v. Ascher Findley Co.*, 229 Cal.App.3d 1139, 280 Cal.Rptr. 521, 529 (1991). A guarantor has the same interest in getting the highest price for the collateral as the debtor has, and should be encouraged to take an active role.

To allow the guarantor to waive notice of sale would undermine the purpose of section 9–501(3), which is to protect debtors (reading guarantors into that term) from creditors who dispose of the collateral improperly. It might also have the effect of *encouraging* creditor misconduct in the holding of the foreclosure sale because the creditor is assured that the guarantor will be responsible for any deficiency. *See May v. The Women's Bank, N.A.*, 807 P.2d 1145, 1150 (Colo.1991).

### IV.

By its notice of appeal, FMCC sought appellate review of the Superior Court order (1) denying the motion for attachment and to amend its complaint and (2) granting partial summary judgment to Thompson. By our order of July 2, 1993, we granted the appellee's motion to dismiss the appeal, except as to the denial of the attachment. FMCC challenged our decision in *Camden National Bank*, 309 A.2d at 330–31 as part of its opposition to Thompson's motion for summary judgment. That partial summary judgment is not before us. A reexamination of *Camden National Bank* must await appellate review on the merits of the partial summary judgment.[7]

The entry is:

Order denying attachment affirmed.

All concurring.

---

6. *See supra* note 2.

7. We recognize that the majority of courts in other jurisdictions have concluded The Absolute Bar Rule is a harsh rule and is contrary to the text in the underlying policy of the U.C.C. *See* Robert M. Lloyd, *The Absolute Bar Rule in UCC* *Foreclosure Sales: A Prescription for Waste*, 40 UCLA L.Rev. 695 (1993) (as of the date of publication of Lloyd's article, only eleven states, including Maine, still employed the absolute bar rule). *Id.* at 745.