**ROC–CENTURY ASSOCIATES,**

v.

**Anthony J. GIUNTA, Personal Representative of the Estate of Stella Saltonstall.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1995.

Decided May 12, 1995.

---

Joh A. Haddow (orally), Mitchell & Stearns, Bangor, for appellant.

Alexandra L. Treadway (orally), Verrill & Dana, Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

Anthony J. Giunta, personal representative of the estate of Stella Saltonstall ("personal representative") appeals from a judgment of the Hancock County Probate Court (*Patterson, J.*) awarding, under New York law, a deficiency judgment to estate creditor ROC–Century Associates ("ROC"). The court found that ROC's sale of the collateral used to secure a loan made to Stella Saltonstall was commercially unreasonable. The personal representative argues that, regardless of whether New York or Maine law is applicable, the award was error. ROC cross appeals, arguing that, under either state's law, the court erred in determining that the sale was commercially unreasonable. Although the court erred by applying New York law, we affirm the judgment under Maine law.

The facts may be summarized as follows: ROC made a loan of $1,000,000 to Stella Saltonstall on December 30, 1986, and Saltonstall signed and delivered a promissory note ("Note") to ROC. As security for the loan, she assigned to ROC her interest as a general partner in CWM Equities ("Collateral"). The sole asset of CWM, a New York partnership, was its right, as a shareholder in a corporation in liquidation (the "242 Corporation") to 22.35% of distributions made by the nominee of the shareholders of that corporation. The terms of the Note provide that it be interpreted and enforced in accordance with the laws of New York. The maturity date on the Note, after an extension, was January 1, 1988.

On May 24, 1988 Saltonstall died owing $909,017.83 in principal on the Note, plus accrued interest and late fees. After her death, ROC contacted the attorneys for the personal representative of her estate and requested all available financial data pertaining to the Collateral. ROC was informed by the attorneys that other partners in CWM had significant claims for embezzlement that might be exerted against the estate. ROC filed a claim against the estate for the amount owing on the note. This claim was initially allowed.

ROC later sold the Collateral at auction after providing notice to the estate and publishing a notice of public sale in the New York Law Journal and the Wall Street Journal. Following the sale of the Collateral for $45,000, the personal representative disallowed ROC's claim against the estate, asserting that the sale was not commercially reasonable and that the value of the Collateral was in excess of $45,000. ROC filed a petition in Probate Court to resolve the disputed claim. After a hearing the court found that the manner of the sale was commercially unreasonable. The court further determined that pursuant to New York law the rebuttable presumption rule would be applied and would permit recovery of a deficiency judgment in spite of the fact that the sale was commercially unreasonable. The court went on to find that, under this rule, the value of the Collateral was $176,006. The court allowed ROC's claim in the amount of the debt, including interest, less $176,006. From this judgment, the parties appeal.

ROC argues that the court erred as a matter of law in finding that the sale was commercially unreasonable. We apply the clearly erroneous standard in reviewing a challenge to such a finding. *See Ocean Nat'l Bank of Kennebunk v. Odell*, 444 A.2d 422, 427 (Me.1982); 68 Am.Jur.2d *Secured Transactions* § 632 (1993). Expert testimony at trial indicated that ROC's characterization of the asset as an interest in the partnership, rather than as a liquidating interest in a dissolved partnership, and its statement in the notice to bidders that claims against Saltonstall's estate could also be asserted against CWM Equities, could have signifi-

cantly undercut its value. This evidence, coupled with the fact that the Collateral, that secured a debt in the amount of $1,000,000, was sold for $45,000, is sufficient, under the clearly erroneous standard, to support the court's factual finding that the sale was not accomplished in a commercially reasonable manner.

■ Turning to the conflict of laws question, we review the Probate Court's decision to apply New York law for error. Under conflict jurisprudence, if New York law is unclear or unsettled, it is appropriate to determine whether a deficiency judgment is allowed after a commercially unreasonable sale by applying the law of Maine as the forum state. *See Restatement (Second) of Conflicts*, § 136 comment h (1971); 16 Am. Jur.2d *Conflict of Laws* § 78 (1979).

■ Our review of New York law demonstrates that the four departments of the Appellate Division of the Supreme Court have taken three different approaches to the question of whether a deficiency judgment is allowed following a commercially unreasonable sale. New York's highest court has yet to resolve this split of authority.[1] Consequently, New York law on this issue is unsettled and the court erred in failing to apply Maine law.

ROC acknowledges that, under Maine law, deficiency judgments have not been permitted in cases of failure to give notice to the debtor. In *Camden Nat'l Bank v. St. Clair*, 309 A.2d 329, 333 (Me.1973), and recently in *Fiatallis North America Inc. v. Hill*, 650 A.2d 222, 224 (Me.1994) we stated that "the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice." Notwithstanding our reference to "dispositions,"

these cases involved only a failure to give notice, and ROC argues that we should not extend the rule to preclude a deficiency judgment following a commercially unreasonable sale.

■ We have recently acknowledged that the majority of courts in other jurisdictions have concluded that an absolute bar is a harsh rule and is contrary to the underlying policy of the U.C.C. *Ford Motor Credit Co. v. Thompson Machine, Inc.*, 649 A.2d 19, 23 n. 7 (Me.1994). It is particularly harsh in cases involving a commercially unreasonable sale when it can create a windfall for a debtor who has been given proper notice and has not been the victim of an unscrupulous creditor. Debtors should not be permitted to avoid paying a deficiency merely because the creditor makes an error with regard to the often complex requirements for conducting a commercially reasonable sale.

■ Under the rule that we adopt today for cases in which the sale of collateral is not conducted in a commercially reasonable manner, a rebuttable presumption is raised that the value of the collateral sold is equal to the amount of the indebtedness. *See Business Dev. Corp. of Georgia v. Contestabile*, 261 Ga. 886, 413 S.E.2d 447, 448 (1992). To overcome the presumption and establish a right to a deficiency judgment, a creditor must present evidence of the fair and reasonable value of the collateral and must show that the value was less than the debt. *See Emmons v. Burkett*, 256 Ga. 855, 353 S.E.2d 908, 910 (1987). This rule encourages loans, while at the same time it imposes liability on a creditor for the actual damages resulting from a failure to conduct a commercially reasonable sale.

---

1. Two of the departments, the First and Fourth, have held, under the rebuttable presumption rule, that a deficiency judgment is allowed following a commercially unreasonable sale. *See General Electric Credit Corp. v. Durante Bros. & Sons, Inc.*, 79 A.D.2d 509, 433 N.Y.S.2d 574 (1 Dept.1980); *Telemark, Inc. v. Lavigne*, 124 A.D.2d 1055, 508 N.Y.S.2d 737 (4 Dept.1986); *Chrysler Credit Corp. v. Mitchell*, 94 A.D.2d 971, 464 N.Y.S.2d 96 (4 Dept.1983); *S.M. Flickinger Co., Inc. v. 18 Genesee Corp.*, 71 A.D.2d 382, 423 N.Y.S.D 2d 73 (4 Dept.1979); *Security Trust Co.*

*of Rochester v. Thomas*, 59 A.D.2d 242, 399 N.Y.S.2d 511 (4 Dept.1977). The Second Department has held that a deficiency judgment is absolutely barred if the sale of the collateral is commercially unreasonable. *See Central Budget Corp. v. Garrett*, 48 A.D.2d 825, 368 N.Y.S.2d 268 (2 Dept.1975). The Third Department has held that a deficiency judgment is not absolutely barred following a commercially unreasonable sale and that the debtor's sole remedy is a set-off of any losses that he can prove. *See Stanchi v. Kemp*, 48 A.D.2d 973, 370 N.Y.S.2d 26, 28 (3 Dept.1975).

Although it was error to apply New York law, the Probate Court applied the rebuttable presumption rule correctly and found that the fair value of the Collateral is $176,006 and that ROC is entitled to the balance of the principal and interest due on the note, less $176,006. In view of our adoption of the rebuttable presumption rule, we affirm the judgment under Maine law.

The entry is:

Judgment affirmed.

All concurring.