**FORD MOTOR CREDIT CO.**

v.

**Jerome and Claudette MOORE**

v.

**Thomas O'CONNOR, et al.[1]**

Supreme Judicial Court of Maine.

Argued March 14, 1995.
Decided July 31, 1995.

---

1. The remaining third-party defendants are Paul Stuart, Edward Hammond, Harold Hodgins, and John Swansburg.

Rita M. Farry (orally), Greenberg & Greenberg, Portland, for plaintiff.

Ralph A. Dyer (orally), Law Offices of Ralph A. Dyer, P.A., Portland, for Moores.

Christian T. Chandler (orally), Curtis Thaxter Stevens Broder & Micoleau, Portland, for O'Connor, et al.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

WATHEN, Chief Justice.

Defendants Jerome and Claudette Moore appeal from summary judgments entered in the Superior Court (Cumberland County, *Brodrick and Fritzsche, JJ.*) in favor of the plaintiff, Ford Motor Credit Company (FMCC), and in favor of the third-party defendants, majority shareholders of Maine Industrial Services, Inc. (MIS). FMCC brought an action against the Moores as guarantors of a computer equipment and software lease, and the Moores brought a third-party claim against the majority shareholders of MIS for indemnification and damages resulting from emotional distress. The Moores argue that genuine issues of material fact preclude the summary judgments, that they are excused from liability by FMCC's conduct, that the damages are excessive, that the shareholders breached a duty owed to the guarantors, and that they have a valid claim against the shareholders for intentional and negligent infliction of emotional distress. We affirm the summary judgments, but modify the damages awarded to FMCC.

The Moores personally guaranteed a computer equipment and software lease entered into by Studebaker–Worthington Leasing Corp. (Studebaker) and MIS in February 1990. Studebaker later assigned its rights and interest in the rents due under the lease to FMCC as security. MIS made 20 monthly payments on the 60–month lease through October 1991. MIS then filed a bankruptcy petition and made no further payments.

In February 1993, FMCC brought an action against the Moores pursuant to their guarantee agreement to collect the rentals due under the defaulted lease. The Moores filed a third-party complaint against the majority shareholders of MIS. The third-party defendants filed a motion to dismiss or, in the alternative, a motion for a summary judgment, which the court granted. FMCC moved for a summary judgment requesting $49,191.12, the sum of the rentals due, together with service charges. After a hearing, the court granted a summary judgment for this sum plus interest, costs, and attorney fees. The Moores appeal from both judgments.

A summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R.Civ.P. 56(c). On appeal, we view the evidence in the light most favorable to the party against whom the judgment was rendered, and review the court's decision for error of law. *Moore v. Maine Indus. Serv., Inc.*, 645 A.2d 626, 628 (Me.1994).

### The Summary Judgment for FMCC

The Moores argue that they offered admissible evidence demonstrating that FMCC breached its duty to act in a commercially reasonable manner by failing to accept the tender of the leased goods, and that this breach results in the discharge of their guarantee.[2] They argue principally that this duty

---

**2.** In an effort to generate a genuine issue of fact, defendants' counsel filed his own affidavit in

which he attested to the fact that he had heard the former president of MIS testify in a bank-

derives from Article 2A of the Uniform Commercial Code, 11 M.R.S.A. § 2–1529, and that it should be applied to the lease at issue even though the lease was signed before enactment of the article. The Superior Court held that Article 2A did not apply retroactively.

■ We first note that Article 2A applies to leases and does not apply to a guarantee agreement except insofar as the article controls the content of the lease subject to the guarantee. Unlike the term "debtor" as used in Article 9, which includes any "person who owes payment . . . whether or not he . . . has rights in the collateral," *see Ford Motor Credit Co. v. Thompson Mach., Inc.,* 649 A.2d 19, 22 (Me.1994), the term "lessee" as used in Article 2A is confined to "a person who acquires the right to possession and use of goods under a lease." 11 M.R.S.A. § 2–1103(1)(n) (1995). Directly addressing the content of the lease in this case, the Moores seek to have us apply the statutory provision in Article 2A concerning tender (11 M.R.S.A. § 2–1529) enacted after the execution of the lease, in order to vary the default and surrender provisions contained in the lease. We agree with the Superior Court that section 2–1529 neither explicitly nor implicitly reveals any legislative intent for retroactive application. *See Sinclair v. Sinclair,* 654 A.2d 438, 440 (Me.1995); *Norton v. C.P. Blouin, Inc.,* 511 A.2d 1056, 1060–61 (Me.1986).

■ Next, the Moores argue that notwithstanding the waiver contained in their guarantee agreement, FMCC was required, pursuant to common law or by statutory analogy, to accept a tender of the leased goods or forfeit their right to enforce the guarantee. Even if such a duty exists as between the parties to the lease, *see Schiavi Mobile Homes v. Gironda,* 463 A.2d 722, 724–25

(Me.1983), here the Moores have waived the defense that might prevail between the parties, and the determinative issue is the validity of that waiver.

The guarantee agreement in relevant part contained the following waivers:

> Guarantors waive any right to require Lessor to: (a) proceed against Lessee; (b) proceed against or exhaust any security held from Lessee; (c) pursue any other remedy in Lessor's power whatsoever; or (d) notify Guarantors of any default by Lessee in the payment of any rent or other sums reserved in the Lease or Other Agreements or in the performance of any term, covenant or condition therein required to be kept, observed or performed by Lessee. *Guarantors waive any defense arising by reason of any disability or other defense of Lessee or by reason of the cessation from any cause whatsoever of the liability of Lessee.*

(Emphasis added).

We disagree with the Moores' contention that their waiver is unconscionable and commercially unreasonable, and therefore should not be enforced. The Moores provide no persuasive reason or analogy for prohibiting such a waiver as a matter of public policy.[3] We reject as a basis for unconscionability their contentions that lessors may take advantage of such a waiver and that guarantors are generally no more sophisticated than lessees. The Moores fail to establish the invalidity of the waiver.

We next address the issue of damages. The lease allows for a service charge of 10 percent of each installment for which rent is delinquent, or $10, whichever is greater, plus interest on the delinquent rent. FMCC concedes that the 10 percent penalty should apply only to payments that were late before

---

ruptcy proceeding concerning a tender of the leased goods. He attached a transcript of the testimony and stated that he obtained an audiotape from the court and had it transcribed by an unnamed person. We are not required to resolve the admissibility of this affidavit.

3. We recently held that waivers of notice in guarantee agreements were invalid because a guarantor is a debtor for the purpose of Article 9, and debtors cannot waive their right to receive notice, pursuant to 11 M.R.S.A. § 9–501(3). *Ford*

*Motor Credit Co. v. Thompson Mach., Inc.,* 649 A.2d 19, 22 (Me.1994). We noted that prohibiting guarantors from waiving Article 9 protections promotes efficiency in the default and foreclosure stage of the transaction by encouraging "lenders to provide the guarantor with the opportunity to attend the sale and perhaps maximize the purchase price." *Id.* at 23. The present case, however, is not governed by Article 9; nor does it involve notice of a sale.

FMCC filed its complaint. The record shows that at the date of the complaint, sixteen months of rent were overdue. Applying 10 percent to the overdue rent of $17,887.68 (16 months × $1,117.98 per month) results in a service charge of $1,788.80 rather than the $4,471.92 service charge determined by the Superior Court. We also agree that, in accordance with the terms of the underlying lease, a prepayment credit should have been factored into the damages award. As FMCC conceded, that credit should be $80.49. We therefore modify the FMCC's judgment and reduce the damages awarded by a total of $2,963.61.

### The Summary Judgment on the Third-Party Complaint

 The Moores argue that the court erred in granting summary judgment to the majority shareholders on the Moores' third-party indemnification claim. They urge us to find that the majority shareholders owed a duty to them as guarantors of the lease, and that they have presented genuine issues of material fact that the shareholders breached this duty. We note that there is no indemnification agreement between the Moores and the majority shareholders. The Moores offer no reason to pierce the corporate veil[4] and hold the majority shareholders personally liable for actions they might have taken in managing the corporation that may have led to MIS's inability to make payments under the lease. Even taken in the light most favorable to the Moores, there is insufficient evidence of fraud or other inequitable conduct in the record to justify imposing liability on the majority shareholders. Finally, we find no merit in the Moores' argument that a substitution of the majority shareholders to the lease contract occurred.

We also find no merit in the Moores' contention that the court erred in granting a summary judgment to the majority shareholders on the Moores' claims for intentional and negligent infliction of emotional distress. The Moores have not produced evidence sufficient to withstand a summary judgment on either claim. *See Gray v. State,* 624 A.2d 479, 484 (Me.1993); *Gammon v. Osteopathic Hosp. of Maine,* 534 A.2d 1282, 1285 (Me. 1987).

The entry is:

Judgment for Ford Motor Credit Co. reduced to $46,027.51 together with interest, costs, and attorney fees, and, as so modified, affirmed. Judgment for third-party defendants affirmed.

All concurring.

---

4. "The corporate entity will be disregarded when used to cover fraud or illegality, or to justify a wrong." *Maine Aviation Corp. v. Johnson,* 160 Me. 1, 5, 196 A.2d 748 (1964) (quoting *Bonnar–Vawter, Inc. v. Johnson,* 157 Me. 380, 387, 173 A.2d 141 (1961)). "Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy." *Bangor Punta Operations, Inc. v. Bangor & A.R.R.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (U.S.1974).