MAINE AVIATION CORPORATION
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Cumberland.   Opinion, January 14, 1964.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

*Robert F. Preti,* for Appellant.

*John W. Benoit,*
*Carl O. Bradford,*
*Jon R. Doyle, Asst. Attys. Gen.,* for Appellees.

WILLIAMSON, C. J.  On report.  This is an appeal from the assessment of a use tax on the transfer of a Cessna 310B aircraft from Bar Harbor Airways, Inc. to the appellant, Maine Aviation Corporation, both Maine corporations. There is no dispute about the amount of the tax based on the value of the aircraft, if it be determined that a tax is due.

Maine Aviation was registered with the Tax Assessor as a corporation doing business in aviation sales and service and also operated aviation services in Auburn and Portland, conducting "the business of flight instruction, charter services, air taxi service, aircraft rentals." Bar Harbor Airways was likewise so registered and was similarly engaged in business in Trenton, Maine. Sales and Use Tax Law, R. S., c. 17, § 6.

In September 1958 Bar Harbor Airways purchased the Cessna aircraft in question for resale in the ordinary business of purchasing and selling aircraft. Subsequently, and before the transfer to Maine Aviation, it used the aircraft for "its own benefit and profit purposes" and paid a use tax thereon. In brief, the aircraft was taken from the stock in trade or inventory and used by Bar Harbor Airways for its general corporate purposes.

In February 1959 the aircraft was transferred to Maine Aviation for its use and not for resale. The transfer was evidenced by a bill of sale on a Federal Aviation Agency form used for registration purposes. The bill of sale exe-

cuted by Bar Harbor Airways named as the seller reads in part:

> ## "FEDERAL AVIATION AGENCY
> ## BILL OF SALE
>
> For and in consideration of $1.00 A.O.C. the under-signed owner of the full legal and beneficial title of the aircraft described as follows:
>
> ### Aircraft Make and Model
> ### CESSNA 310B
> * * * * * * * *
>
> does . . . hereby sell, grant, transfer, and deliver all of his right, title and interest in and to such aircraft unto:
>
> (Name and address of purchaser — same as on Parts A and B of this form)
> ## MAINE AVIATION CORPORATION
> * * * * * * * *
>
> Name of Seller  BAR HARBOR AIRWAYS INC.
>
> By (Sign in ink)   Joseph A. Caruso
>
> (If executed for co-ownership, all must sign)
>
> Title   PRESIDENT . . . . ."

The letters "A.O.C." are an abbreviation of "and other consideration."

The two stockholders of Bar Harbor Airways, each of whom owned of record or equitably one-half of its outstanding capital stock, organized Maine Aviation to bring about, in the words of appellant's counsel, a "spin off" under Federal income tax law of a portion of their business assets to a new corporation. The purpose of the "reorganization" was to take advantage of income tax benefits of no interest to us in detail. The outstanding capital stock of the new corporation representing the book value of the aircraft was owned of record and equitably by the same two stockholders precisely as was the stock of Bar Harbor Airways.

The pertinent parts of the Sales and Use Tax Law (R. S., c. 17) are:

"**Sec. 4. Use Tax.** A tax is imposed on the storage, use or other consumption in this State of tangible personal property, purchased at retail sale on and after July 1, 1957, at the rate of 3% of the sale price. Every person so storing, using or otherwise consuming is liable for the tax until he has paid the same or has taken a receipt from his seller, thereto duly authorized by the Tax Assessor, showing that the seller has collected the sales or use tax, in which case the seller shall be liable for it."

(The above rate was in effect at the time of the transaction.)

In order that a use tax be imposed, there must be a retail sale or sale at retail.

"**Sec. 2. Definitions.** 'Retail sale' or 'sale at retail' means any sale of tangible personal property, in the ordinary course of business, for consumption or use, or for any purpose other than for resale, except resale as a casual sale, in the form of tangible personal property, . . . The term 'retail sale' or 'sale at retail' does not include . . . any other isolated transaction in which any tangible personal property is sold, transferred, offered for sale or delivered by the owner thereof, such sale, transfer, offer for sale, or delivery not being made in the ordinary course of repeated and successive transactions of a like character by such owner, such transactions being elsewhere sometimes referred to as 'casual sales' . . . "

\* \* \* \* \* \* \* \* \* \*

" 'Sale' means any transfer, exchange or barter, in any manner or by any means whatsoever, for a consideration in the regular course of business. . . "

\* \* \* \* \* \* \* \* \* \*

" 'Use' includes the exercise in this State of any right or power over tangible personal property

incident to its ownership when purchased by the user at retail sale."

"**Sec. 9. Presumption concerning sales.** The burden of proving that a transaction was not taxable shall be upon the person charged with tax liability."

The decisive issue in our view is whether the transfer of the aircraft was a "casual sale," and hence not subject to the use tax.

The appellant strongly urges that we look behind the corporate entities to find no more than a splitting off of certain property from one corporation to a newly created corporation with precisely the same ownership of stock. It argues that there was no sale within the meaning of the Sales and Use Tax Law.

We see no reason, however, for disregarding the corporate entities. In *Bonnar-Vawter, Inc.* v. *Johnson,* 157 Me. 380, 173 A. (2nd) 141, we held transactions between a parent and subsidiary corporation were subject to the sales tax. We said at pp. 387, 388:

> "Generally, courts have been reluctant to disregard the legal entity of a corporation, and have done so with caution and only when necessary in the interest of justice. The corporate entity will be disregarded when used to cover fraud or illegality, or to justify a wrong. It will not be disregarded when to do so would promote an injustice, give an unfair advantage, or contravene public policy."
>
> \* \* \* \* \* \* \* \* \* \*
>
> "In the field of retail sales tax legislation and similar tax legislation, courts have generally refused, for various reasons, to separate the corporate entities of the parent company and the wholly owned subsidary in order to grant relief from such taxes at the expense of the state."

In the instant case there were substantial reasons for the transfer of the aircraft to a new corporation. The ap-

pellant tells us the "reorganization" was intended to accomplish income tax benefits.

We have here in terms the sale of an aircraft by the owner Bar Harbor Airways to a purchaser Maine Aviation for its use and not for resale. There was a consideration stated for the sale, which on examination appears to have been stock representing the book value of the aircraft.

If we go behind the corporate entities we enter the thicket of income tax law. This we are not prepared to do. The stockholders chose to operate their business through two corporations and not one. They must accept the burdens with the benefits of their course of conduct. We recognize Bar Harbor Airways and Maine Aviation as separate corporate entities under the Sales and Use Tax Law.

The question becomes whether the sale of the aircraft was a casual sale removed from the category of the taxable retail sale. We restate the facts briefly. Bar Harbor Airways, engaged in selling and operating aircraft, took from its stock the Cessna aircraft in question, used it in the corporate business, paid a use tax thereon, and sold the aircraft to a third party, Maine Aviation, for the latter's use and not for resale. This transaction, in our view, is an isolated transaction or casual sale, as defined in Section 2, *supra*. It was a sale "not being made in the ordinary course of repeated and successive transactions of a like character by such owner . . . "

From the point of view of Bar Harbor Airways the transaction was not of "like character" with other sales of aircraft purchased and retained for resale. The corporation was engaged in selling aircraft, but was not engaged in the business of selling aircraft *used by it* for its own business purposes.

The appellee urges that a sale of an aircraft by one registered dealer to another registered dealer is in the ordinary

course of business and not a casual sale. In our opinion the case is analogous to that of the grocer's casual sale of his cash register.

The fact that the seller is engaged in the selling of aircraft does not require a finding that a sale of this particular aircraft held for use and not resale was not a casual sale within the Act. That difficult problems of proof might arise in a given situation does not destroy the validity of the analogy.

There is nothing in the record to indicate that this was one "of repeated and successive transactions of a like character." No one suggests that Bar Harbor Airways had ever sold an *aircraft used by it* for its corporate business.

In *Pacific Pipeline Construction Company* v. *State Board of Equalization* (Cal.), 321 P. (2nd) 729, cited by the Tax Assessor, the California Court held that the transfer of machinery and equipment pursuant to the reorganization of certain corporations was a sale at retail and hence taxable. The court said, at p. 731:

> "Section 6006.5 defines an occasional sale as follows: 'Occasional sale' includes: (a) A sale of property not held or used by a seller in the course of an activity for which he is required to hold a seller's permit, provided such sale is not one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit; . . ."
>
> \* \* \* \* \* \* \* \* \* \*
>
> "The undisputed evidence shows that the sale was one of a series of sales sufficient in number, scope and character to constitute an activity requiring the holding of a seller's permit and was therefore not an occasional sale under subdivision (a) of section 6006.5. Plaintiff's own evidence shows that in 19 separate sales, in addition to the sale in question, it sold at various times from 1947 through 1950, 65 items of equipment for a total of $41,879.22."

The court also found the reorganization did not bring the sales within another provision of the "occasional sale" statute.

We are aware that the Tax Assessor in his Sales and Use Tax Instruction Bulletin No. 9, revised July 1, 1955, adopted the view of the California statute. The Tax Assessor said:

"**Non-taxable casual sales.** The following sales will be deemed casual and thus, except as to motor vehicles, not subject to sales or use tax:

"a. Isolated sales of a non-recurring nature made by a person not engaged in the business of selling tangible personal property;

"b. Sales of used articles of tangible personal property originally acquired for use or other consumption by a retailer or seller which are not sold in the regular course of any business engaged in by such retailer or seller.

"Examples of non-taxable sales:

"A grocer selling his cash register. . . "

The interpretive bulletin does not, of course, have the force of law. This does not deny recognition of the value such bulletins play in the administration of the law. *Sampson-Sawyer Co.* v. *Johnson,* 156 Me. 544, 552, 167 A. (2nd) 1.

The State contends that evidence was not admissible (1) to show the reorganization plan between the two corporations from the records of Bar Harbor Airways, and (2) to establish consideration or lack of consideration in fact in view of the stated consideration in the bill of sale.

We see no error in admission of the evidence. The party charged with the tax is entitled to show the facts of the transaction. Acts of Bar Harbor Airways obviously bore upon the issue of the sale which the State seeks to tax.

Insofar as the consideration in the bill of sale is concerned, surely it would be a harsh rule that would force the parties in a tax case of this nature to stand upon the formal "one dollar and other valuable consideration." Consideration in fact has an important bearing upon the amount of tax.

We are left on the facts here presented with an isolated transaction or "casual sale" not subject to the use tax.

The entry will be

*Appeal sustained.*

*Remanded for entry of judgment in accordance with this opinion.*