Strafford
No. 87-476

WALTER W. FISCHER

v.

CITY OF DOVER & a.

March 6, 1989

*Holland, Donovan, Beckett, Welch & Hermans P.A.*, of Exeter (*William H. M. Beckett* on the brief and orally), for the plaintiff.

*Scott E. Woodman*, city attorney, by brief and orally, for the defendant.

*James Koromilas*, of Dover, by brief and orally, for the intervenors, the heirs of Simon Janetos and Edward and Ahn Murphy.

BROCK, C.J. The issues raised by this appeal are (1) whether the plaintiff, Walter W. Fischer, the former president and sole stockholder of a dissolved corporation, has standing to bring an action against the defendant, City of Dover (City), for its failure to comply with an agreement concerning a strip of land which the corporation conveyed to the City; and (2) whether the plaintiff's claims for rescission of the deed or reconveyance of the land, based upon an alleged unconstitutional taking and equitable principles of mistake and illegality, were barred by the 20-year limitation period governing the recovery of real estate. *See* RSA 508:2.

The Superior Court (*Groff*, J.) ruled that the plaintiff had no standing. It also found that although the plaintiff's claims for reconveyance of the land based on both equitable principles and an unconstitutional taking were subject to the 20-year statute of limitations, the constitutional claim was time-barred because that cause of action accrued at the time of the conveyance of the land. The court found, however, that the equitable claims were not barred. For the reasons that follow, we hold that the plaintiff has standing to bring this action. We do not address the issue of whether the plaintiff's constitutional or equitable claims were barred, because we hold that the plaintiff has an adequate remedy at law which he may pursue on remand.

Walter W. Fischer, the plaintiff, was the president and sole shareholder of Fischer Homes, Inc., a New Hampshire corporation. On May 29, 1964, Fischer Homes, Inc. (the corporation) purchased a parcel of land in Dover. Upon acquiring the parcel, the corporation applied for preliminary approval to subdivide the parcel into nineteen lots. The subdivision plan called for construction of a road, "Country Club Estates Drive." Between the proposed road, which ran roughly northeast to southwest, and the neighboring property, to the northwest, was a narrow strip of land of varying width, known as the "reserved strip." This strip was essentially part of the road location. The corporation's plan was to retain ownership of this strip, selling lots south of the proposed road.

On August 31, 1964, and later, on May 3, 1965, after a revision of the subdivision plan, the Dover Planning Board (the board) granted preliminary approval of the plan on the condition that the corporation convey the "reserved strip" to the City. In return, the

City agreed that the purchasers of land abutting Country Club Estates Drive to the northwest "shall reimburse Fischer Homes for such share of improvements installed by Fischer Homes as shall be of benefit to said abutting property in proportion to the frontage on the Drive owned by said abutters." As a further condition of approval, the corporation was required to file in the office of the city clerk a "certified copy of all actual construction figures necessary to establish the front footage cost of highway construction to be paid by any abutters under the terms of the Contract between the City of Dover and Fischer Homes concerning the proposed reserve strip." The corporation subsequently conveyed the reserved strip by deed, without reservation, to the City on August 19, 1966. On the same date, the corporation gave a deed to the road which it had constructed to the City. In this deed, the following clause appeared:

"Reserving, however, to Fischer Homes, Inc., its successors and assigns, the right to reimbursement from the owners, their heirs and assigns, of the land abutting Country Club Estates Drive on the Northwesterly side thereof between Gulf Road and Sligo Road as shown on said plan, for their proportionate share of the cost of utilities and road installation when and if they desire to use said facilities to the improvement of their abutting lands. This reservation does not apply to purchasers of lots in Country Club Estates as indicated in the aforementioned plan."

On August 24, 1966, the Dover City Council accepted the deed conveying the road to the City. Subsequently, the corporation sold all of its subdivided parcels, save one, to a third party. On October 19, 1967, the corporation, acting in compliance with its agreement, filed with the city clerk construction cost figures for the road and utilities, totalling $84,395.

Thereafter, on February 23, 1978, the heirs of Simon Janetos submitted for approval a subdivision plan of their property abutting the reserved strip to the northwest, which created one lot for prospective purchasers Edward and Ahn Murphy, who are intervenors in this action. The application was given final approval, contingent upon "[p]roper compliance with all restrictive covenants as filed in the City Clerk's Office, to the satisfaction of Fischer Homes, Inc., and the City of Dover." A dispute as to the correct reimbursement figure led the City to seek the counsel of the city attorney, who advised the City that it could not condition approval of the subdivision plan upon compliance with the reimbursement agreement. He stated that "impos[ing] a duty upon the city to

collect monies that may be owed to Fischer Homes, Inc. . . . is an improper exercise of the statutory authority granted to the City, in that the City is using its powers to effectuate a private concern's collection of its debts." Following this advice, the board, on July 25, 1978, approved the subdivision plan, specifically noting that it had removed the condition of reimbursement.

The corporation then appealed the decision of the board to the superior court. It requested the court to set aside and vacate the subdivision approval, and to enjoin the issuance of building permits and subdivision approvals without the board's first requiring reimbursement to the corporation. On August 25, 1981, the court dismissed the appeal, noting that it expressed no opinion regarding the enforceability of the reserved right to reimbursement. The corporation did not appeal this order. Meanwhile, prior to the dismissal, the corporation was dissolved by the Legislature.

Several years later, in February, 1987, the City granted the Murphys a right-of-way over the reserved strip to the road, which allowed them to obtain a driveway permit and a certificate of occupancy. This easement gave the Murphys access to the road. No provision was made for compensation to the plaintiff.

In response to the granting of the easement, the plaintiff filed a bill in equity against the City, claiming that as the sole stockholder of the dissolved corporation, he was entitled to either reconveyance from the City of the reserved strip or rescission of the deed, or, alternatively, compensation for the allegedly unconstitutional "taking" of the reserved strip by the City. The intervenors, the Murphys and the heirs of Simon Janetos, were allowed to join the action.

After a two-day trial, the superior court, without reaching the merits, dismissed the action. It ruled that: (1) the plaintiff had no standing because the corporation had not brought this action within the three-year period following dissolution as required by the corporation continuance statute, see RSA 293-A:95, and the cause of action was not an asset to which the plaintiff could succeed as sole stockholder; (2) the plaintiff's claim for reconveyance of the reserved strip, based on an unconstitutional taking, was barred since the 20-year statute of limitations applicable to the conveyance of real estate began to run at the time of conveyance; but that (3) the claim for cancellation of the deed or rescission of the contract based on equitable principles was not barred by the limitation period since the cause of action did not arise until the "plaintiff could reasonably have been expected to realize that the City was

not going to require the payments as a condition of subdivision approval of the reserved strip to the City."

On appeal, the plaintiff claims error. First, he contends that the agreement with the City that the corporation would be compensated for the construction and improvements to the road was an asset which passed to him upon the dissolution of the corporation. Thus, he argues, the corporation continuance statute is inapplicable and he has standing to bring this action. We agree.

■ This court has long subscribed to the equitable rule of law that the assets owned by a corporation prior to its dissolution pass, upon dissolution, to the former shareholders subject to the payment of corporate debts. *Hampton v. Hampton Beach Improvement Co.*, 107 N.H. 89, 94, 218 A.2d 442, 446 (1966); *Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 706, 474 A.2d 1382, 1385 (1984). In *Hampton*, this court held that the former stockholders of a dissolved corporation succeeded to a lease which was held by the corporation before its dissolution, and to the rights and liabilities of the corporation in the leasehold estate. *Hampton, supra* at 94, 218 A.2d at 446–47. More recently, in *Jenot*, this court held that the former stockholders of a corporation automatically succeeded, in their individual capacities, to the right to a mortgage and promissory note when the corporation failed to exercise its right to foreclose the mortgage or enforce the note within the three-year windup period. *Jenot, supra* at 707, 474 A.2d at 1386. Although the corporation continuance statute operated to bar the defunct corporation from foreclosing the mortgage or enforcing the promissory note, the statute did not bar the shareholders from suing in their individual capacities. *Jenot, supra* at 707, 474 A.2d at 1385–86.

In the case at bar, the corporation continuance statute in effect at the time of the corporation's dissolution, RSA 294:98, provided the following:

"[A]ny business corporation dissolved by act of the legislature shall nevertheless continue as a body corporate for the term of 3 years, for the purpose of prosecuting and defending suits by or against it and of gradually closing and settling its concerns and distributing its assets, and for no other purpose . . . ."

*See* present RSA 293-A:95, I(c) and RSA 293-A:106.

■ As a preliminary matter, we note that "[t]he corporation continuance statute expands rather than limits the rights and remedies of dissolved corporations." *MBC, Inc. v. Engel*, 119 N.H.

8, 11, 397 A.2d 636, 638 (1979). Prior to the enactment of these statutes, the dissolution of a corporation terminated its legal existence in all respects. Under the common law a corporation could no longer sue or be sued, and all pending actions by or against it were abated. *Id.* The statute, which thus served to expand the rights of corporations, was not intended to supplant or limit the well established equitable rule that the assets of a dissolved corporation devolve to the former shareholders. *See Jenot, supra* at 708, 474 A.2d at 1386 (court has not construed corporation continuance statute to supplant equitable rule).

The City and the intervenors rely upon *MBC, Inc.* to support their argument that the corporation continuance statute bars the plaintiff from asserting the rights of the dissolved corporation. In that case, however, the former shareholders sought to recover for tortious injuries sustained by the corporation; they were not seeking to enforce a separate right or asset which had devolved to them as individuals. *MBC, Inc., supra* at 9–10, 397 A.2d at 637; *see Jenot, supra* at 708, 474 A.2d at 1386 (interpreting *MBC, Inc.* as a bar to shareholder derivative actions after expiration of three-year statutory period).

■ In contrast, the instant case is more closely analogous to *Hampton* and *Jenot*. The corporation's right to reimbursement for the cost of improvements benefiting the abutters was similar to the promise to pay found in the promisssory note in *Jenot*; it was not simply a cause of action which had accrued to the corporation. In fact, the corporation did not have the right to reimbursement until such time as the purchasers of the abutting land "desire[d] to use said facilities [i.e., the road and utilities] to the improvement of their . . . lands." This event did not occur until 1987, when the Murphys requested and were granted an easement in order to gain access to the road. The right to reimbursement did not accrue in 1978, at the time the intervenors gained approval for the subdivision of the abutting land, because at that time they had no access to the road, and, therefore, could not have used the facilities to improve their land. In sum, because the right to reimbursement, as evidenced by the deed, devolved to the plaintiff as former shareholder, he had standing to bring this action.

The plaintiff next argues that the trial court erred in ruling that his claim of an unconstitutional taking was time-barred by the 20-year limitation period governing the conveyance of real estate, which began to run at the time of conveyance. The plaintiff contends that the limitation period did not begin to run until February, 1987, when he had reason to know that he would not be

compensated for the land conveyed to the City or, at the earliest, in 1978, when the planning board approved the Murphy subdivision plan.

We need not address this issue, however, because we hold that the plaintiff has an enforceable contract claim against the City arising from the breach of its promise of reimbursement. Although the trial court found that "[a] contract between the corporation and the City was apparently never executed," it is evident from the record that there was a contractual agreement between the parties, supported by consideration, that the corporation was to be compensated for its construction of the road and installation of utilities. The deed conveying the road to the City, and the minutes of the May 3, 1965 planning board meeting, make it clear that the corporation was to be reimbursed in consideration for its conveyances to the City.

The City counters these facts with the argument that the agreement did not obligate it to do anything. Rather, the purchasers of the abutting land, not the City, were to reimburse the corporation. The City further attempts to wash its hands of the agreement by contending that, because it does not have statutory authority to act as a "bill collector," it could not collect money from the abutters on behalf of the plaintiff.

In *Laconia Clinic, Inc. v. Cullen*, 119 N.H. 804, 806, 408 A.2d 412, 413, however, this court stated:

> "Terms which are plainly or necessarily implied in the language of a contract are as much a part of it as those which are expressed. If the provisions of the instrument taken together clearly show that the obligation in question . . . is necessary to carry their intention into effect, the law will imply the obligation and enforce it."

*See Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623, 419 A.2d 1111, 1113 (1980). Since the Murphys neither were parties to the agreement nor assented to it, under elementary contract principles, the agreement could not obligate them to reimburse the corporation. 17 AM. JUR. 2d *Contracts* § 18 (1964). It is clear, however, that the intention of the agreement was to provide reimbursement to the corporation for the cost of the road and utilities. The City promised reimbursement to the corporation from "the owners, their heirs and assigns, of the land abutting Country Club Estates Drive." Necessarily implied in this agreement was the obligation of the City to ensure that the corporation was in fact reimbursed, and we hold that it was the City's

responsibility to do so. Since the plaintiff's right to reimbursement accrued in 1987, we note that this cause of action would not be time-barred by the applicable six-year limitation period, *see* RSA 508:4, I.

 Finally, we consider the issue of whether the 20-year limitation period governing the recovery of real estate bars the equitable claim for rescission or reconveyance of the reserved strip. Although courts in New Hampshire have "broad discretion in exercising equity jurisdiction (citation omitted), . . . equitable jurisdiction lies only when there is no plain and complete remedy at law." *Thurston Enterprises, Inc. v. Baldi*, 128 N.H. 760, 764, 519 A.2d 297, 300 (1986); *see Sands v. Stevens*, 121 N.H. 1008, 1011, 437 A.2d 297, 299–300 (1981). The plaintiff in this case seeks equitable relief. However, because the plaintiff has a plain and complete remedy at law for the breach of the agreement between the City and the corporation, we need not decide whether the limitation period bars the equitable actions, and we remand this case to the superior court so that the plaintiff may amend his pleadings and litigate the issue of damages. *See Thurston, supra* at 764, 519 A.2d at 300.

*Affirmed in part; reversed in part; remanded.*

All concurred.