1999 ME 84

Mark E. STURTEVANT, d/b/a M.E.S.
Environmental Services

v.

TOWN OF WINTHROP.

Supreme Judicial Court of Maine.

Argued April 5, 1999.
Decided May 28, 1999.

Paul F. Macri (orally), Julian L. Sweet, Berman & Simmons, P.A., Lewiston, for plaintiff.

Joseph J. Hahn (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

CALKINS, J.

[¶ 1]   Mark Sturtevant appeals from a judgment entered in favor of the Town of Winthrop after a jury trial in the Superior Court (Kennebec County, *Marden, J.*). On appeal, Sturtevant contends that the trial court erred in setting aside the jury verdict in his favor on the ground that he lacked standing to bring the breach of contract claim against the Town. We agree with the trial court that Sturtevant lacked standing, and we affirm the judgment.

[¶ 2]   Mark Sturtevant first entered into a written contract to provide snowplowing services to the Town of Winthrop in 1986.   Between 1972 and 1986 Sturtevant was in the business of earth moving and trucking as well as snow removal and septic system service.   He did business as M.E. Sturtevant, Contractor, and he had a corporation, M.E. Sturtevant Contractors, Inc., which did business with the Town in the late 1980s hauling solid waste.[1]

[¶ 3]   In March 1991, Sturtevant formed a new corporation, M.E.S. Environmental Services, Inc. Sturtevant was the president and sole shareholder of M.E.S. Environmental Services, Inc.   In May 1991, M.E.S. Environmental Services, Inc., and the Town entered into a five-year contract for snowplowing.   Sturtevant signed the contract as president of the corporation.

---

1.   There was testimony that M.E. Sturtevant Contractors, Inc., "lapsed" in 1990.

The contract required the corporation to meet certain standards for its snowplowing equipment and gave the Town the right to cancel the contract for unsatisfactory performance.

[¶ 4] In July 1992, Sturtevant dissolved M.E.S. Environmental Services, Inc., by filing a statement of intent to dissolve and articles of dissolution with the Secretary of State. There was no evidence that Sturtevant delivered a copy of either document to the Town. There is no evidence as to when or how he notified the Town of the corporate dissolution. After the dissolution, Sturtevant continued to snowplow, and the Town continued to pay him for snowplowing.[2] In October 1994, the Town canceled the snowplowing contract, citing equipment and performance failures.

[¶ 5] Shortly thereafter, Sturtevant filed a complaint against the Town claiming breach of contract and demanding lost profits for the remainder of the contract term. In its answer the Town raised the affirmative defense that Sturtevant lacked standing in that he was an improper party because the contract was between the corporation and the Town. The case was tried to a jury. The jury found that the Town breached the contract and assessed damages in favor of Sturtevant of $156,000.

[¶ 6] At the close of Sturtevant's case and at the close of the evidence, the Town moved for judgment as a matter of law on the ground that Sturtevant lacked standing. The Town renewed the motion after the jury verdict. By agreement and with the court's consent, the parties submitted the factual issues regarding standing to the court. After hearing argument and reviewing additional evidence submitted by Sturtevant in the form of an affidavit, the trial court entered judgment for the Town, holding that Sturtevant lacked standing to sue on the corporation's contract.

## I. CORPORATE DISSOLUTION PROCESS

[¶ 7] The statutory scheme governing the voluntary dissolution of Maine corporations requires the corporation to file with the Secretary of State a statement of intent to dissolve. 13–A M.R.S.A. §§ 1102(2), 1105 (1981). At that point the corporation ceases to carry on its business except as needed to wind up the business. *Id* . §§ 1105, 1106(1). The corporation is required to immediately notify all known creditors of the intent to dissolve. *Id.* § 1106(2). The corporation is required to "fulfill or discharge its contracts" and take all other action necessary "to wind up and to liquidate its business and affairs, as expeditiously as practicable." *Id.* § 1106(3). Once the debts of the corporation have been paid and the assets have been distributed to the shareholders, the corporation is required to execute and file articles of dissolution. *Id.* § 1110. The corporation then has a two-year time period starting from the date of filing the articles of dissolution in which an action must be commenced for any remedy against or available to the corporation, its officers, directors or shareholders. *Id.* § 1122(1).[3] This latter provision is referred to as the survival statute. In this case the statement of intent to dissolve and the articles of dissolution were both filed with the Secretary of State on July 17, 1992, making that date the date of dissolution.

---

2. The Town records of payments for snow removal show payments to "M E Sturtevant Contractors" and "M E Sturtevant Contractors Inc" for the winter of 1989–90; to "M E Sturtevant Contractors Inc" for the winters of 1990–91 and 1991–92; and to "MES Environmental Services" for the winters of 1992–93 and 1993–94.

3. The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within 2 years after the date of such dissolution.
13–A M.R.S.A. § 1122(1) (1981).

## II. ASSIGNMENT OF CORPORATE CONTRACT

[¶ 8] Sturtevant argues that the corporation assigned its assets including the snowplowing contract to him, and because of that assignment he has standing as an individual to claim breach of contract by the Town, even though the snowplowing contract was between the Town and M.E.S. Environmental Services, Inc. He submitted to the trial court an affidavit signed by him dated September 15, 1997, which states that all corporate assets and liabilities were distributed to him personally. He further states in the affidavit that as the sole shareholder, president, liquidating trustee and sole distributee of the assets, he authorizes and ratifies his actions in seeking damages for the Town's breach of contract.

[¶ 9] The trial court found that Sturtevant's evidence of assignment was insufficient and that "as a factual matter the purported assignment never occurred." We review the factual finding by the clearly erroneous standard: "[T]he trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them." *Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981). "[T]he function of an appellate court is not to review a cold transcript and draw its own factual inferences; rather, appellate review of factual findings is limited to investigation of the record before it to determine whether competent evidence exists to support the lower tribunal's factual conclusions." *Lewisohn v. State*, 433 A.2d 351, 354 (Me.1981).

[¶ 10] Sturtevant, as the plaintiff, had the burden of proof on the issue of assignment. *See Britton v. Co–op Bank-*

*ing Group*, 4 F.3d 742, 746 (9th Cir.1993); *Alpine Assocs., Inc. v. KP & R, Inc.*, 802 P.2d 1119, 1121 (Colo.Ct.App.1991). He had to demonstrate to the trial court, to whom he and the Town entrusted the task of fact finding, by a preponderance of the evidence, that M.E.S. Environmental Services, Inc., assigned the snowplow contract to himself as an individual.

[¶ 11] For an assignment to be enforceable there must be an act or manifestation by the assignor indicating the intent to transfer the right to the assignee. *See Doughty v. Sullivan*, 661 A.2d 1112, 1124 (Me.1995); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 324 (1981). In this case there was no evidence of a manifestation of the corporate intent to transfer the contract rights at the time the corporation was in existence, and the trial court was not compelled to find that an assignment had occurred.[4] No corporate records were presented to show that an assignment had taken place while the corporation was in existence.

[¶ 12] The dissenting opinion concludes that the trial court was compelled to find the existence of an assignment because of the dissolution of the corporation and because of Sturtevant's conduct in continuing to plow for the Town after the dissolution. Simply because a corporation is dissolved and the shareholder represents, in the boilerplate language of the articles of dissolution form, that the corporate assets have been distributed to the shareholder does not necessarily mean that a contract to which the corporation was a party has been assigned to the shareholder. As the trial court noted, Maine's dissolution statutes

---

4. Even if the court had found an assignment, it is not clear it would give Sturtevant the right to sue on the contract more than two years after dissolution. Several courts have concluded that an assignee of a corporate right cannot assert that right after the expiration of the survival statute, because that would violate the rule that an assignee has no greater rights than his assignor and would

defeat the statute's purpose of providing a fixed time limit for the wind up of corporate affairs. *See Nix v. W.R. Grace & Co.—Conn.*, 830 F.Supp. 601, 605 (S.D.Ala.1993); *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F.Supp. 549, 553 (D.S.D.1989); *Riley v. Fitzgerald*, 178 Cal.App.3d 871, 223 Cal.Rptr. 889, 895 (1986).

treat contracts differently from assets. The corporation is required to "fulfill or discharge its contracts," while assets are distributed to the shareholders once provision has been made for all obligations. 13–A M.R.S.A. § 1106(3), (4). Because "contracts" are not necessarily the same as "assets," the form language in the articles of dissolution, that all assets have been distributed, does not mean that all contracts have been assigned. Furthermore, the trial court could have concluded that the representation by Sturtevant in the articles of dissolution was for the mere purpose of completing the form or that it was not credible.[5] At no time did Sturtevant testify that, in his capacity as president and sole shareholder of the corporation, he had assigned the snow removal contract to himself, nor did he testify that, in his individual capacity, he had accepted an assignment of the snow removal contract from the corporation. The court could have found that the notion of assignment first occurred to Sturtevant after the litigation began and his status as a party became an issue, which was long after the corporation ceased to exist.

■ [¶ 13] The fact that Sturtevant continued to plow for the Town for two years after the corporation was dissolved did not compel a finding of an assignment. That fact says nothing about the intent of the corporation to assign the contract. The court could have believed that Sturtevant simply continued to plow for the Town after dissolution in the same manner that he had plowed for the Town before incorporation. Sturtevant, either through one of his corporations or individually, had been plowing for the Town for a number of years. The court could have considered that Sturtevant did not seem to be concerned whether he was acting in a corporate capacity or as an individual.[6]

[¶ 14] In short, there was no evidence presented by Sturtevant from which the fact-finder was compelled to find that the corporation assigned the contract to its sole shareholder. The evidence taken as a whole supports a finding that the contract was not assigned. The trial court did not clearly err in finding no assignment.

## III. VESTING OF CORPORATE CONTRACT CLAIM IN SHAREHOLDER

[¶ 15] Sturtevant also argues that, as a matter of law, he is entitled to enforce the snowplowing contract because he was the sole shareholder and all assets of a dissolved corporation devolve to the former shareholders. "The equitable principle that former shareholders have the right to a fair share of assets in a dissolved corporation is well-established in many states." *Hutson v. Fulgham Industries, Inc.*, 869 F.2d 1457, 1461 (11th Cir.1989). There is a split of authority as to whether contracts are assets that pass by law to the shareholders of a corporation.

[¶ 16] In *Hutson* the Eleventh Circuit, applying Alabama law, held that a corporation's contract claim which was not asserted within the time period of the survival statute is not an asset that devolves to the shareholder following the corporation's dissolution. The reasoning of the *Hutson*

---

5. Sturtevant admitted at trial that he had been convicted in 1994 of perjury and bank fraud.

6. The correspondence between Sturtevant and the Town, and the Town documents and minutes, show that Sturtevant was sometimes referred to by the Town, and by himself, as an individual and sometimes as a corporation. For example, the Town payment records, referred to above, show that he was paid for snow removal in various capacities; a letter dated February 25, 1994, from the Town is addressed to Mark E. Sturtevant, President, M.E.S. Environmental Services; the Town attorney wrote to Sturtevant in August 1994, in his capacity as president of the corporation, stating that the Town was terminating the snowplow contract with M.E.S. Environmental Services, Inc. The vehicles used by Sturtevant in the snow plow business were variously registered to M.E. Sturtevant Contractor; M.E. Sturtevant Contractor, Inc.; Mark E. Sturtevant, and M.E. Sturtevant.

court is that allowing unasserted contract claims to devolve to the shareholder by operation of law and to allow claims to be brought by the shareholder after the survival period renders the survival statute a nullity. The policy behind the survival statute, which is to provide a definitive period for resolving claims by and against a dissolved corporation, would be thwarted. *Hutson,* 869 F.2d at 1463. Other courts are in agreement. *See Davis v. St. Paul Fire & Marine Ins. Co.,* 727 F.Supp. 549, 552–53 (D.S.D.1989); *Halliwell Assocs., Inc. v. C.E. Maguire Servs., Inc.,* 586 A.2d 530, 534–35 (R.I.1991) (applying Massachusetts law).

[¶ 17] On the other hand, some courts have held that unasserted contract claims pass to the shareholders of a dissolved corporation in their individual capacities. In *Fischer v. City of Dover,* 131 N.H. 469, 554 A.2d 1293, 1297 (1989), the court stated that the survival statute served to expand the rights of corporations and did not limit the equitable rule that all assets devolve to former shareholders.

[¶ 18] Both the Alabama survival statute in *Hutson* and the New Hampshire survival statute in *Fischer* are virtually identical to the Maine survival statute. We accept the reasoning of the *Hutson* court in interpreting the statute. We are persuaded that in enacting the survival statute the Legislature intended that a corporation assert all of its claims within the two-year period and claims that are not asserted are lost. It was incumbent upon Sturtevant as the dissolving corporation's president to make provision for the contract before filing the articles of dissolution. The record is devoid of evidence that Sturtevant took any steps before dissolution to insure that he, as an individual, would be able to enforce the contract.

## IV.  EQUITABLE ESTOPPEL

[¶ 19] Sturtevant contends that the Town is equitably estopped to assert a lack of standing against him.

"[T]he doctrine of equitable estoppel states that 'a party (1) who is guilty of a misrepresentation of existing fact, including concealment, (2) upon which the other party justifiably relies, (3) to his injury, is estopped from denying his utterances or acts to the detriment of the other party.'" *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales,* 1998 ME 53, ¶ 25, 707 A.2d 1311, 1318 (quoting J. CALAMARI & J. PERILLO, CONTRACTS § 11–29(b), at 489 (3d ed.1987)). We review the trial court's conclusion that equitable estoppel does not apply for clear error. *Littlefield v. Adler,* 676 A.2d 940, 943 (Me.1996).

[¶ 20] Sturtevant claims that the Town misled him by continuing to deal with him in his individual capacity and by not objecting to the corporate dissolution. He argues that if the Town had objected to the dissolution, he would have withdrawn the dissolution and kept the corporation in existence. He does not explain why or how the Town's silence or failure to object were misleading. In order for this argument to have any credibility Sturtevant would have had to show when the Town learned of the dissolution. The Town could hardly be expected to object to something it did not know about. Sturtevant, however, failed to present any evidence as to when he notified the Town about the dissolution or when the Town learned about the dissolution. The trial court did not commit clear error in refusing to apply equitable estoppel against the Town.

## V.  ALTER EGO THEORY

[¶ 21] Sturtevant argues that he has standing to sue for breach of the corporation's contract because he was the corporation's alter ego. In the ordinary case in which alter ego or piercing the corporate veil is raised, a third party seeks to disregard the corporate form in order to impose the corporation's liabilities on a shareholder. *See, e.g., Johnson v. Exclusive Props. Unlimited,* 1998 ME 244, ¶¶ 4–9, 720 A.2d 568, 570–72. Sturtevant, in

contrast, seeks to disregard the corporate form so that he, as a former shareholder, can hold a third party liable on a contract with the corporation. Although some courts have allowed "reverse piercing,"[7] the weight of authority is against reverse piercing. A leading commentator notes that the procedure of reverse piercing,

> has been justified based upon the equity of piercing the corporate veil. However, the better rule would seem to be that a person who has voluntarily adopted the corporate form to engage in business is precluded from asking courts to disregard that form merely because the person is disadvantaged by its use.

1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.70, at 686 (perm. ed.1999) (footnote omitted); see also id. § 41.35, at 672–73 ("The corporate form may be disregarded only where equity requires the action to assist a third party. Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his or her convenience.") (footnote omitted).[8]

[¶ 22] Even if we were to allow reverse piercing, Sturtevant has not met his burden of showing that an injustice will occur unless the corporate form is disregarded. Sturtevant voluntarily formed the corporation and then voluntarily dissolved it. Before dissolution he should have taken steps to enforce, renegotiate or assign the contract, but he did not. He continued to do the plowing himself after the corporate dissolution, and he was paid for the plowing that he did. His only argument with the Town is that he believes he should reap the benefit of the corporation's contract through the term of the contract even though he dissolved the very entity that entered into the contract. No injustice will occur if Sturtevant fails to obtain the profits that the corporation would have earned had it continued to remain in business.

[¶ 23] There is an additional flaw in Sturtevant's alter ego analysis. The corporation no longer exists and has not existed since the articles of dissolution were filed, except that it could sue or be sued within the following two years under the survival statute. See 13–A M.R.S.A. § 1122(1). By the time Sturtevant filed the breach of contract action, there was no corporation to which he was an alter ego. Only by retroactively piercing the corporate veil of a dissolved corporation could Sturtevant gain standing, and it is not apparent that any court has ever allowed retroactive reverse piercing. There is no basis for concluding that the trial court erred in refusing to recognize Sturtevant's standing as an alter ego of the corporation.

The entry is:

Judgment affirmed.

DANA, J., dissents and files opinion in which CLIFFORD, J. joins.

DANA, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 24] For want of a writing, ("I as President assign the contract to myself") the trial court and now this Court elevates form over substance and finds that the assignment never happened. I respectfully dissent.

[¶ 25] This discussion requires a more thorough examination of the facts. In 1986, Sturtevant, prior to incorporation as

7. See Crum v. Krol, 99 Ill.App.3d 651, 54 Ill.Dec. 864, 425 N.E.2d 1081, 1088–89 (1981) (piercing corporate veil on behalf of shareholder who neglected to join corporation as plaintiff in suit on corporate contract); Roepke v. Western Nat'l Mut. Ins. Co., 302 N.W.2d 350, 352–53 (Minn.1981) (piercing corporate veil on behalf of shareholder's estate where shareholder died in crash of car for which corporation was named insured).

8. In the context of sales tax cases, we have been loath to allow taxpayers to disclaim the corporate form to avoid paying taxes. We said that people who choose to operate a business through a corporation and accept whatever benefits are available through that form must also accept its burdens. See Maine Aviation Corp. v. Johnson, 160 Me. 1, 6, 196 A.2d 748 (1964); Bonnar–Vawter, Inc. v. Johnson, 157 Me. 380, 388, 173 A.2d 141 (1961).

M.E.S. Environmental Services, Inc., entered into a contract with the Town of Winthrop for snowplowing services. In 1991, after its formation, the Town renewed the contract with the corporation.

[¶ 26] In July 1992, Sturtevant dissolved M.E.S. Environmental Services, Inc. He testified that he informed the Town of the corporate dissolution. Thereafter, Town correspondences, Town Council minutes, and other Town documents written after the corporate dissolution refer to Sturtevant in his individual capacity. For example, correspondences from the Town manager to Sturtevant written in February and July 1994 are addressed to M.E.S. Environmental Services, not the corporate entity. The Town Council minutes from May 16, 1994, refer to "Mark Sturtevant, Contract Snowplower." In July 1994, the Town manager submitted "An Analysis of Snowplowing Alternatives" to the Town Council that states that "We have a contract with Marc [sic] Sturtevant." Town Council minutes from August 1, 1994, refer to "Mark E. Sturtevant" performing "his snowplow contract."

[¶ 27] Similarly, all correspondences from Sturtevant or Sturtevant's attorney to the Town after corporate dissolution refer to M.E.S. Environmental Services, without any reference to the corporate entity. In July 1994, Sturtevant wrote to the Town regarding a possible contractual arrangement with Buzzell and crossed out "Inc." on his letterhead to reflect the corporate dissolution. The Town attorney who received the letter testified that the crossed-out "Inc." indicated that M.E.S. was no longer a corporation.

[¶ 28] Around this same time, Sturtevant expressed his intent to assign the contract to Elwood Buzzell, another snowplower, but the Town argued that such an assignment would violate the contract. The Town attorney's letter in response reflects the Town's understanding that a contract existed with Sturtevant individually and that the Town would attempt to enforce the contract. The attorney states that the Town Council discussed "your snowplowing contract with the Town," contends that "assignment of your contractual interests and obligations to Elwood Buzzell further violates the contract," and questions "whether you will continue to personally manage the snowplowing activities as you have done in the past." Similarly, in August 1994, the Town attorney wrote Sturtevant's attorney regarding the Town Council's concern "over Mark's current intentions regarding an assignment of the contract." In all respects the Town treated Sturtevant—not the corporation—as the contracting party and attempted to enforce the contract to prohibit an assignment to Buzzell.

[¶ 29] While the Town continued to refer to Sturtevant in his individual capacity in Town minutes and communications, the Town also paid Sturtevant in his individual capacity for services rendered after corporate dissolution. Sturtevant testified that after dissolution he requested that the Town make payments to him individually, doing business as M.E.S. Environmental Services, instead of to the corporation. The only evidence offered by the Town that it was not aware of the assignment was provided by the Town's outside counsel who testified that *he personally* was not aware that Sturtevant had notified the Town of the dissolution or that the Town was paying Sturtevant individually for his performance of the contract. There is no dispute, however, that Sturtevant performed the snowplowing contract and that the Town paid Sturtevant in his individual capacity for this work.

[¶ 30] When the Town terminated the contract in October 1994, Sturtevant, d/b/a M.E.S. Environmental Services, sued for breach of the contract. Although the Town in its answer denied the existence of a contract with Sturtevant individually, it failed to move for a summary judgment. At trial, the Town argued that Sturtevant violated the contract regarding the condition of his equipment and the quality of his snowplowing and that he therefore failed

to perform satisfactorily the snowplowing .contract. At the close of Sturtevant's case, the Town moved for a directed verdict on the ground that Sturtevant did not have standing because M.E.S. Environmental Services, Inc., did not assign the contract to him individually. The Town renewed its motion at the close of evidence.

[¶ 31] The jury found that the Town had breached the contract and awarded Sturtevant damages of $156,000. The Town again renewed its motion after the jury verdict, and the court permitted the parties to submit evidence on the issue of the assignment. As evidence of the assignment, Sturtevant submitted an affidavit explaining that all of the corporation's assets were distributed to himself and attached the articles of dissolution of M.E.S. Environmental Services, Inc. Finding "no evidence of any written or verbal manifestation of intent to assign the contract" the court concluded there had been no assignment and Sturtevant, therefore, lacked standing to sue the Town. This appeal followed.

[¶ 32] "[T]he intent to vest in the assignee a present right in the thing assigned must be manifested by some oral or written word or by some *conduct* signifying a relinquishment of control by the assignor and an appropriation to the assignee." *Shiro v. Drew,* 174 F.Supp. 495, 498 (D.Me.1959) (emphasis added) (quoting *Lone Star Cement Corp. v. Swartwout,* 93 F.2d 767, 769–70 (4th Cir.1938)). M.E.S. Environmental Services, Inc., through its president and sole shareholder Sturtevant, manifested its intent to assign the contract when Sturtevant, in his corporate capacity, dissolved his corporation and when Sturtevant, in his individual capacity, continued to perform the plowing contract after dissolution. *See id.; Doughty v. Sullivan,* 661 A.2d 1112, 1124 (Me.1995). Here, the assignor and the assignee are the same person acting in two capacities. To deny that Sturtevant's conduct evidences an assignment frustrates the intent of both the corporation and Sturtevant individually. Moreover, 13–A M.R.S.A. § 1110 (1981) requires that a corporation shall only file articles of dissolution when "all debts, liabilities and obligations of the corporation have been paid and discharged, or adequate provision has been made therefor, and all remaining property and assets of the corporation have been distributed to its shareholders." The filing of the articles, therefore, is further evidence that should be considered in determining whether the corporation had assigned the contract. I conclude that Sturtevant's conduct, the filing of the articles of dissolution, and the absence of any evidence to the contrary is compelling evidence of an assignment.

[¶ 33] No evidence whatsoever was presented indicating that Sturtevant and the Town negotiated or entered into a new contract following the dissolution of the corporation. Yet both Sturtevant and the Town continued to reference "the contract" and to act under its terms. The inescapable conclusion is that the contract entered into between the Town and the corporation was assigned to Sturtevant personally and that Sturtevant, in fact, continued to fulfill the obligations under that contract.

[¶ 34] Notwithstanding this evidence of an assignment, the trial court concluded that Sturtevant had "failed to present sufficient evidence to establish that any such assignment actually occurred." In this regard, in my view, the court clearly erred. In doing so the court acknowledged that for an assignment to be effective it need not be in writing [9] and that since the con-

---

9. Although no contemporaneous writing or corporate record memorialized the assignment, no such writing is required. In the absence of an applicable statute, a manifestation of a present intent to assign a right need not be in writing. *See* RESTATEMENT (SECOND) OF CONTRACTS § 324 (1981). Maine law does not require a writing for a corporation to assign a contract, therefore, M.E.S. Environmental Services, Inc.'s failure to generate a

tract was not a personal services contract, the Town's consent to the assignment was also not required.[10]

[¶ 35] An assignee of a contract has the right to sue for a subsequent breach of the contract notwithstanding Maine's survival statute. *See* 13–A M.R.S.A. § 1122 (1981). Section 1122(1) provides that "[t]he dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders for *any right or claim existing ... prior to such dissolution,* if action or other proceeding thereon is commenced within 2 years after the date of such dissolution." (emphasis added). Section 1122(1) does not apply to assignees who seek recovery in their individual capacities for a claim that arose after the assignment. *See id.; Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 435 (7th Cir.1988) (applying Illinois law) ("If a claim is held individually, even if it arises in conjunction with a corporate matter ..., the corporate survival statute does not bar a suit to enforce the claim even if it is brought after the time period specified in the corporate survival statute."); *Davis v. St. Paul Fire & Marine Ins. Co.,* 727 F.Supp. 549, 552 (D.S.D.1989) (distinguishing individual claims from derivative corporate claims for purpose of applying survival statute); *Halliwell Assocs., Inc. v. C.E. Maguire Servs., Inc.,* 586 A.2d 530, 533 (R.I.1991) (same). An individual claim arises when there has been a violation of a duty owed directly to the individual. *See Davis,* 727 F.Supp. at 552. If, however, the claim arises from an injury to the corporation or is an action instituted to redress a wrong to the corporation, then the action is derivative in nature. *See id.*

[¶ 36] Here, Sturtevant is asserting an individual contractual right pursuant to an assigned contract—he is not asserting a corporate claim. *See Hunter,* 844 F.2d at 435. The breach occurred more than two years after corporate dissolution and is in no way derivative of an injury to M.E.S. Environmental Services, Inc. The cases cited by the Court to suggest that section 1122 might bar Sturtevant from asserting his individual claim are inapposite because those cases address the assignment of corporate claims, not individual claims. *See Nix v. W.R. Grace & Co.—Conn.,* 830 F.Supp. 601, 605 (S.D.Ala.1993); *Davis,* 727 F.Supp. at 553; *Riley v. Fitzgerald,* 178 Cal.App.3d 871, 223 Cal.Rptr. 889, 895 (1986). Consequently, Sturtevant, as an assignee asserting an individual claim, is not barred by section 1122 from bringing this action which arose more than two years after corporate dissolution.

[¶ 37] Because of a valid assignment of the contract, Sturtevant had standing to sue. I would restore the jury verdict in his favor.

---

writing or corporate record to evidence the assignment is not controlling.

**10.** The court concluded that a snowplowing contract is not a service that involves the type of personal service, trust, or confidence that would require the Town's consent, particular-ly where the contract was purportedly assigned by the corporation to the sole shareholder who controlled its operations. *See Salmon Lake Seed Co. v. Frontier Trust Co.,* 130 Me. 69, 74, 153 A. 671, 673 (1931).