STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE      JUN 13 2002      SUPERIOR COURT
KNOX, ss.                               CIVIL DOCKET NO. 02-019

RANDALL HOPKINS in his capacity )
as Personal Representative of the Estate )
of Lempi Makinen, et. al.,[1] )
          Plaintiffs )
)
v. )     **DECISION AND ORDER** DONALD L. GARBRECHT
)                             LAW LIBRARY
ERVIN and CHRISTINE CURTIS, )
          Defendants )           JUN 21 2002

Before the court is the Motion for Approval of Attachment of the plaintiffs, Randall Hopkins ("Hopkins") and Frank A. Felix, II ("Felix"). Because the court finds that there is a reasonable likelihood of success as to Felix, the motion is granted in part and denied in part.

## BACKGROUND

The documents and affidavits submitted by the parties demonstrate the following. On February 11, 1993, Lempi Makinen ("Makinen") entered into an "Annuity Contract and Occupancy Agreement" (the "Contract") with the defendants, Ervin and Christine Curtis (the "Curtises"). The Contract provides that in consideration for a warranty deed from Makinen to the Curtises for property located in South Thomaston, the Curtises promised to pay $200,000 to Makinen. The Curtises were to pay the $200,000 to Makinen in annual installments of $12,000, with a payment of $1,000 to be made every month. The Contract further provides that, within 180 days of Makinen's death, the Curtises would pay the remaining balance to her estate. The Contract also states that in further consideration of the deed, the Curtises granted to Makinen the right to the exclusive personal use and occupancy of her home, which was located on the property. On February 11, 1993, the same day the parties executed the Contract, Makinen executed and delivered a "Warranty Deed" conveying the property in South Thomaston to the Curtises. The Warranty Deed was recorded in the Knox County Registry of Deeds on that same date.

---

[1] Frank A. Felix, II, in his capacity as Personal Representative of the Estate of Ellen Felix.

On September 27, 1993, Makinen and the Curtises signed an "Amendment to Annuity and Occupancy Agreement" (the "Amendment"). The Amendment provides that it is in consideration of the Warranty Deed from Makinen to the Curtises, and limits the amount to be paid under the Contract upon Makinen's death to a maximum of $48,000 to be paid in monthly installments of $1,000 to "Ellen Phlix" ("Ellen"), Makinen's niece. If the dollar amount of the balance is less than $48,000 on Makinen's death, the Amendment states that the Curtises must pay the unpaid balance to Ellen at the rate of $1,000 per month.

Ellen died on April 24, 1999 in Oregon leaving all her property in trust for the benefit of her husband. When her husband died shortly thereafter, the corpus of the trust passed to her sons, Frank A. Felix, II, and James E. Felix. Plaintiff Frank Felix was appointed as the Personal Representative of Ellen's estate on January 22, 2002.

Makinen died on November 30, 2000 at the age of 96. Thereafter, Hopkins was appointed as the Personal Representative of Makinen's estate pursuant to her Last Will and Testament. According to the plaintiffs, since Makinen's death, the Curtises have failed to make any payment to either Makinen's estate or to Ellen's estate. The Curtises contend that "[a]t the time of Mrs. Makinen's death, we had made all of our payments, on time, $94,000. We have not made any subsequent payments as the annuity contract, as amended, does not require us to make any further payments." They assert that the money was for Ellen's benefit, not her heirs, and that because Ellen died before Makinen, they are not required to pay her estate.

The plaintiffs brought this action on February 15, 2002. They ask for a judgment declaring that the Amendment is void for lack of consideration (Count I); a judgment declaring that the Amendment is void because of undue influence (Count II); an order directing the Curtises to specifically perform under the Contract and to pay to them the full balance due on the Contract as of Makinen's death (Count III); damages due to the Curtises' breach of contract (Count IV). In the alternative, the plaintiffs ask for a declaratory judgment constructing the Contract and Amendment and a declaration that the Estate of Ellen Felix is entitled to continued payments from the Curtises under the Contract and Amendment until the Curtises have paid a total of $48,000 (Count V); an order of the court directing the Curtises to specifically perform under the Contract and

2

Amendment and to make the payments to the plaintiffs (Count VI); and breach of the Contract and Amendment (Count VII).

On February 15, 2002, the plaintiffs also filed their Motion for Approval of Attachment, alleging that it is more likely than not that they will recover judgment in an amount equal to or greater than the aggregate sum of $200,000. For the following reasons, the court allows the motion as to Felix only and only for the amount of $48,000.

## DISCUSSION

### I. Standard

"In any action under these rules, real estate, goods and chattels and other property may . . . be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover." M.R. Civ. P. 4A (a). "Under the rule governing prejudgment attachments, M.R. Civ. P. 4A, the movant must show that there is a reasonable likelihood that judgment will be recovered in an amount equal to or greater than that of the attachment." First National Bank of Damariscotta v. Staab, 505 A.2d 490, 491 (Me. 1986). "In determining whether there is a reasonable likelihood that the moving party will prevail, the Superior Court has the same range of discretion that it normally enjoys in finding facts and applying legal norms to those facts . . . ." Bowman v. Dussault, 425 A.2d 1325, 1328 (Me. 1981). "The plaintiff must demonstrate by affidavit or otherwise a reasonable likelihood of success." The Dartmouth Company v. Day's, Inc., 419 A.2d 366, 367 (Me. 1980). "Because prejudgment attachment may operate harshly upon the party against whom it is sought, there must be strict compliance with the procedures prescribed by legislation and implemented by court rules." First National Bank, 505 A.2d at 491.

### II. Validity of the Contract and Amendment

#### A. The Contract

The parties consider the February 11, 1993 Contract between the Curtises and Makinen to be valid.[2] All of the plaintiffs' claims are based on the assumption that the

---

[2] The Contract may not be a true "annuity contract," but more of an "account receivable." See 4 AM.JUR. 2D ANNUITIES §§ 1, 2; Commonwealth v. Beisel, 13 A.2d 419, 421 (Pa. 1940). Thus, the Curtises' monthly payments represented nothing more than installment payments to cover the amount owed by the Curtises. This is, however, a moot point, as both annuity contracts and accounts receivable contracts must follow general principles of contract law. But, because the parties consider the contract an annuity contract, the court will refer to the contract as an annuity contract.

3

Contract is valid, and the defendants' arguments are similarly based on the assumption that both the Contract and the Amendment are valid. Because the parties disagree over the validity of the Amendment, the issue here is whether there is a reasonable likelihood that the plaintiffs would recover under the Amendment.

## B. The Amendment

The Amendment states:

> The undersigned hereby agree that Article I of the Annuity Contract and Occupancy Agreement between them dated 11 February 1993 is amended as follows:

> I.      In consideration of the Warranty Deed executed by the SELLER on 11 February 1993, conveying real estate located in South Thomaston, Knox County, Maine, to BUYERS, BUYERS hereby promise to pay to SELLER Twelve Thousand Dollars ($12,000.00) per annum during SELLER'S lifetime up to a maximum of Two Hundred Thousand Dollars ($200,000.00). Payments will be made at the rate of One Thousand Dollars ($1,000.00) per month, the first payment having been made on 11 February 1993, and monthly payment of One Thousand Dollars ($1,000.00) each to be made on the first day of each month thereafter so long as the SELLER shall live. In the event of the SELLER'S death, the monthly payments shall continue to Ellen Phlix of Corvallis, Oregon for a maximum of 48 months, not to exceed Forty-Eight Thousand Dollars ($48,000.00). If the dollar amount of the balance is less than Forty-Eight Thousand Dollars ($48,000.00) at the time of SELLER'S death, the BUYERS will pay the unpaid balance at the rate of One Thousand Dollars ($1,000.00) per month.

> The purpose of this Amendment is to provide a testamentary gift for Ellen Phlix pursuant to the express wishes of Lempi Makinen and to delete the BUYERS' obligations to make payment to seller's estate.

"Although any contract may be modified by a subsequent agreement, the new agreement must comply with the requirements of a valid contract." Roy v. Danis, 553 A.2d 663, 664 (Me. 1989). Thus, a valid amendment requires an offer, an acceptance, and consideration. See Parker v. Wakelin, 937 F.Supp. 46, 53 (D.Me. 1996). The plaintiffs contend that the Amendment lacked consideration. "To render an offeror's promise enforceable, an offeree must provide consideration, which is some 'performance or return promise . . . sought by the promisor in exchange for his promise.'" Id. at 53,

4

*quoting* RESTATEMENT (SECOND) OF CONTRACTS § 71 (2) (1981) (hereinafter "RESTATEMENT").

It appears from the documents and affidavits submitted that this case is an example of the gratuitous assignment of a right creating a novation. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." RESTATEMENT § 317 (1). "An assignment is gratuitous unless it is given or taken in exchange for a performance or return promise that would be consideration for a promise." Id. at § 332 (5)(a). Ellen provided no consideration for the assignment of the payments after Makinen's death. As a matter of fact, it is unclear whether Ellen was even aware of Makinen's assignment.

"For an assignment to be enforceable there must be an act or manifestation by the assignor indicating the intent to transfer the right to the assignee." Sturtevant v. Town of Winthrop, 1999 ME 84, ¶ 11, 732 A.2d 264, 267, *citing* RESTATEMENT § 324. The Amendment clearly expresses Makinen's intent to assign the benefit of the payments to Ellen upon Makinen's death.

"A novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." RESTATEMENT § 280. "The performance to be rendered under the new duty may be the same as or different from that to be rendered under the original duty." Id. at § 280 cmt. a. "A novation is subject to the same requirements as any other contract, including that of consideration. [C]onsideration to support the discharge of the original duty can usually be found in the promise to undertake a new duty." Id. at § 280 cmt. c.

> A simple novation involving a substitution of obligees results when an obligee promises his obligor to discharge the obligor's duty in consideration for the obligor's promise to a third person to render either the performance that was due from the obligor or some other performance. A substitution of obligees may also result when the obligor's promise is one made directly to the obligee but is one to render the performance to a third person as beneficiary. If the third person is an intended beneficiary, there is a novation.

Id. at § 280 cmt. e.

The assignment made Ellen an intended beneficiary. "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the

beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Id. at § 302 (1)(b).

There was consideration for the Amendment, and it is, therefore, valid. The original Contract was an agreement that Makinen would sell her property in exchange for the Curtises' payment of $200,000, payable at $12,000 per year, balance due to Makinen's estate upon Makinen's death. Under the Amendment, Makinen gave up the payments to her estate in exchange for the Curtises' payment of the balance or $48,000 to Ellen Felix, whichever was less. Makinen's promise to discharge the Curtises' duty to pay her estate was adequate consideration for their promise to pay Ellen.

Because the Amendment is valid, the only remaining question is whether Makinen intended the money to be for Ellen or that it would pass to her heirs upon her death. The resolution of that question requires the interpretation of the contractual terms, which is the responsibility of the factfinder. For purposes of this motion, however, although the contract could be interpreted to mean that the money was intended for Ellen only, there is a reasonable possibility that the contract would be interpreted to mean that the parties intended Ellen *or* her estate to receive the money. See 4 AM.JUR. 2D ANNUITIES § 7 ("In the absence of an intention to the contrary, where an annuity is given to a named person, to terminate at a stated time, the annuity generally does not cease upon the death of the annuitant before that time, but passes to his or her estate during the remainder of the period.").

Because the Amendment is valid, there is a reasonable likelihood that Felix would recover, and there is not a reasonable likelihood that Hopkins would recover. The Motion to Attach, therefore, is granted as to Felix only. The Motion to Attach as to Hopkins is denied.

THE DOCKET ENTRY IS:

Plaintiff Felix's Motion to Attach is allowed. Plaintiff Hopkins's Motion to Attach is denied.

The clerk is directed to incorporate this order into the docket by reference.

Justice, Superior Court

DATED: June 13, 2002

Plaintiff's Attorney:
Mary Cooper, Esq.
PO Box 190
Camden ME 04843
236-8836

Defendant's Attorney:
Stephen Hanscom, Esq.
PO Box 664
Rockland, ME 04841
594-4421